## CIRCUIT COURT OF SCOTT COUNTY

Ellis Hopkins
and Gerald Hopkins,
Co-Administrators of the
Will of Myrtie M. Mullins,
Deceased

v.

Dewey G. Lawson
and Nancy L. Lawson

February 26, 1990

Case No. (Chancery) 2708

## By JUDGE JAMES C. ROBERSON

I have reviewed the pleadings, evidence, motions, briefs, and heard arguments of counsel in the above-styled suit and make the following findings of facts and conclusions of law.

### Proceedings

This suit to set aside a deed for lack of mental capacity of the grantor and undue influence by the grantee was filed on April 14, 1987, by the next friend of Myrtie Mullins, grantor, against the grantees, Dewey G. Lawson and Nancy Lawson. On September 26, 1988, the Court sustained a demurrer to the bill of complaint and granted complainant thirty days to file an amended bill of complaint. The grantor, Myrtie Mullins, died on July 14, 1987, and the final amended bill of complaint was subsequently filed on October 24, 1988, by Ellis Hopkins and Gerald Hopkins, Co-Administrators of the Last Will and Testament of Myrtie

2

M. Mullins, deceased, against Dewey G. Lawson and Nancy L. Lawson. On October 28, 1988, the defendants filed their answer and demurrer to the amended bill of complaint, together with a plea of the statute of limitations. By order entered November 14, 1988, the defendants withdrew their demurrer, the plaintiffs waived trial by jury, and the plaintiffs were granted leave to file the amended bill of complaint. The final amended bill of complaint alleges that the decedent, Myrtie M. Mullins, by deed dated November 26, 1985, conveyed two tracts of land in Scott County, Virginia, to Dewey G. Lawson and Nancy L. Lawson. The bill alleges there was no actual consideration paid by grantees to grantor for the conveyance; that the grantor "did not possess the necessary mental capacity to understand and appreciate the effevts [sic] of her actions," and the "defendants used undue influence on Myrtie Mullins because of her weakness of mind due to her age, sickness, and other causes."

The prayer of the complainant requests "the Court hold this conveyance by Myrtie Mullins void for lack of mental capacity . . ."

By agreement of all parties, the suit was tried by the Court without a jury on December 15, 1988. Counsel were granted leave to file briefs. The court heard arguments of counsel on June 12, 1989, and makes the following findings of facts and conclusions of law.

### Findings of Fact

On November 26, 1985, Myrtie M. Mullins executed a deed conveying to Dewey C. Lawson and Nancy L. Lawson two tracts of land in Scott County, Virginia, more particularly described in the bill of complaint. Although the fair market value of the property was approximately $14,500, the grantees did not pay any consideration for the property. The Lawsons said Mullins conveyed the property to them because she loved them. The grantees (Lawsons) rented the property involved from Myrtie M. Mullins (Mullins) since 1972 for $45.00 per month until the conveyance on November 26, 1985. After the conveyance by Mullins to the Lawsons, the Lawsons continued to live on the property and continued to give the impression to the public that the Lawsons were still renting the property. The Lawsons

stated that they concealed the fact that they were grantees instead of lessees because the grantor, Mrs. Mullins, did not want people to know about the deed.

Gerald Hopkins, nephew and co-administrator of the Last Will and Testament of Myrtie M. Mullins, had for several years prior to Mrs. Mullins's death, served as her close personal advisor. He handled her financial matters and wrote checks for Mrs. Mullins to sign.

In 1986, Dewey Lawson told Gerald Hopkins that the roof on the property was leaking. Hopkins, who did not know that Mullins had conveyed the property to the Lawsons, told Lawson that he would have the roof repaired. Subsequently, in late 1986 when Hopkins saw Lawson again and they discussed the roof repair, then Dewey Lawson told Hopkins about the deed from Mrs. Mullins. Myrtie M. Mullins was close to eighty years of age when she died on July 14, 1987. Prior to 1982, she was a meticulous, religious, dominant, and possessive person. She was a good housekeeper, good business person, and dressed well. In 1982, Mrs. Mullins's memory began to fail. Beginning in 1984, her nephew, Gerald Hopkins, had to write all of her checks. Her ability to understand financial matters diminished. In October, 1984, Mrs. Mullins became erratic in her behavior. She thought someone was stealing her electricity, and she unplugged the refrigerator. She imagined that people were outside her house. In 1984, her personal appearance and dress deteriorated. She would wear two dresses and a sweater. She would wear two pairs of socks. She would not take her shoes off, would not sleep in the bed but slept on the couch. She did not want to bathe. She did not know what property she owned and had no knowledge of the value of her property. Her housekeeping skills deteriorated. She would stand in the middle of the road with a broom and sweep 150 to 200 feet.

By July, 1985, Myrtie Mullins was confused. She did not know or recognize her relatives. She could not recognize pictures of her brother and sister. She lost the ability to operate her television and did not know how to turn it on.

On July 1, 1985, Myrtie Mullins was taken to see Dr. Warren Smith, a licensed physician and family practitioner. Dr. Smith found that Mrs. Mullins had degenerative arthritis, osteoporosis (thinning of the bones), marked

hyphosis (stooped over). He further diagnosed her as being senile, which he referred to as senile dementia, commonly referred to as softening of the brain, or organic brain syndrome. Dr. Smith stated that Mrs. Mullins's senility was severe. She did not recognize her niece who brought her to the doctor. Dr. Smith was of the opinion that on July 1, 1985, Mrs. Mullins was "not mentally competent at that time." Dr. Smith saw Mrs. Mullins again on August 1, 1985. She always appeared to be senile and never recognized the doctor. He stated that with respect to the state that he found Mrs. Mullins in July, 1985, "I have never seen it improve."

Dr. Smith saw Mrs. Mullins again on March 13, 1986. His notes indicate that, "The patient is mentally incompetent; she does not know that her brother is dead. She doesn't know the year and doesn't know where she is." Dr. Smith was of the opinion that as of November 26, 1985, Myrtie Mullins did not have the mental capacity at that time to understand the effect of transferring real estate. He stated that she was senile in July, 1985, and he had "not ever seen senility improve." Betty Lee Kinsler, a paternal niece of Mrs. Mullins, had a close relationship with her from 1974 until her death. She found Mrs. Mullins to be completely senile in July, 1985. Mrs. Mullins did not know anyone. In October, 1985, when Mrs. Kinsler's father died, Mrs. Mullins did not recognize a picture of her own brother.

Alta Johnson, a sister of Mrs. Mullins, said that Mrs. Mullins did not know her and her husband in the summer of 1985.

Dr. Elvis R. Thompson, a maternal nephew of Myrtie Mullins, visited Mrs. Mullins in September, 1985. Mrs. Mullins did not know him and did not recognize her sister. In 1981, Mrs. Mullins has refused to sell the property in question.

Alice Spivey, who had known Myrtie Mullins for fifty-seven years, removed Mrs. Mullins from the road when she was sweeping. Mrs. Mullins did not recognize her then or since 1982. She believes Mrs. Mullins was incompetent. She did not know Monday from Saturday and December from July.

James B. Spivey, who knew Myrtie Mullins for fifty

years, said that the last three or four years of her life, Mrs. Mullins did not know him and was confused.

Ernest B. Johnson stated that after 1982. Myrtie Mullins was incompetent to do business.

Defendant, Dewey G. Lawson, got an attorney to prepare the deed. He took the deed to Mrs. Mullins and read it to her. He then took Mrs. Mullins to a notary public to have her sign the deed. He did not take Mrs. Mullins back to the lawyer who prepared the deed.

Doris M. Pearson, the notary public, did not remember too much about the execution of the deed. She stated that Mrs. Mullins stated she had read the deed and wanted to sign it. Mrs. Mullins signed the deed as "Mrs. B. C. Mullins," and the notary told Mrs. Mullins to sign it another way (Mulie Mullins) (sic), which is incorrectly spelled.

## Discussion and Authorities

The amended bill of complaint prays that the Court find that the conveyance by Myrtie Mullins to the Lawsons be declared void for lack of mental capacity by the grantor. The complaint states that at the time of the conveyance, Myrtie Mullins did not possess the necessary mental capacity to understand and appreciate the effects of her actions.

The bill of complaint further alleges there was no consideration paid for the property, and the defendants used undue influence on Myrtie Mullins because of her weakness of mind due to her age, sickness, and other causes.

The test for determining whether one lacks sufficient capacity to become bound absolutely by deed or contract is whether, at the time the instrument was executed, the grantor possessed sufficient mental capacity to understand the nature of the transaction and to agree to its provisions, *Brown, Executor v. Resort Development*, 238 Va. 527 (1989), citing *Lohman v. Sherwood*, 181 Va. 594, 607, 26 S.E.2d 74, 79-80 (1943).

In *Martin v. Phillips*, 235 Va. 523, 528, 369 S.E.2d 397 (1988), the Supreme Court of Virginia stated that to raise a presumption of undue influence in the execution of a deed, the clear and convincing evidence must show (by clear and convincing evidence) that (1) the grantor had great weakness of mind when the document was executed; (2) the grantee stood in a confidential or fiduciary re-

lationship to the grantor, either in a formal relationship, or in a less formal relationship involving matters of a business nature, and (3) the consideration was grossly inadequate or the transaction occurred amidst circumstances of suspicion (citing *Fishburne and wife v. Ferguson Heirs*, 84 Va. 87 at 111, 4 S.E. 575 at 582 (1887)).

If the court finds that the grantor, Myrtie Mullins, did not possess sufficient mental capacity to understand the nature of the transaction when she conveyed the property to the Lawsons, then the conveyance must be set aside whether or not there was fraud or undue influence.

Even if the Court found that Mrs. Mullins was not legally incompetent but had a diminished mental capacity, the Court could rescind the conveyance where there was also grossly inadequate consideration warranting an inference of fraud or undue influence. *See, Payne v. Simmons*, 232 Va. 379, 384, 350 S.E.2d 637 (1986). The defendants claim that the plaintiffs' claim is barred by § 8.01-248 of the Code of Virginia because the deed was executed by Mrs. Mullins on November 26, 1985, and the suit to set aside the deed was filed on April 14, 1987. The defendants claim that the action was not brought within one year after the right to bring such action accrued. In actions for fraud, or mistake, and in actions for rescission of contract for undue influence, the cause of action shall be deemed to accrue, when such fraud, mistake, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered. *See* § 8.01-249 of the Code of Virginia.

If the Court finds that the grantor was so mentally incapable of rationally conducting her own affairs from July 1, 1985, to the time of her death on July 14, 1987, then under the provisions of § 8.01-229, any statute of limitation would be tolled. Under § 8.01-229(A)(2)(b):

If a person entitled to bring such action becomes of unsound mind, the time during which he is of unsound mind shall not be computed as any part of the period within which the action must be brought . . . .

[A] person shall be deemed of unsound mind if he is adjudged insane by a court of competent jurisdiction to be mentally incapable

of rationally conducting her own affairs, or if it shall otherwise appear to the Court or jury determining the issue that such person is or was so mentally incapable of rationally conducting his own affairs within the prescribed limitation period.

Based upon the evidence and the law, the Court finds that:

(1) At the time of the execution of the deed of conveyance by Myrtie M. Mullins to Dewey G. Lawson and Nancy L. Lawson on November 26, 1985, the grantor, Myrtie M. Mullins, did not possess sufficient mental capacity to understand the nature of the deed of conveyance and the effects thereof and to agree to its provisions.

(2) From July 1, 1985, until her death on July 14, 1987, the grantor, Myrtie M. Mullins, was a person of unsound mind and was mentally incapable of rationally conducting her own affairs, including execution of a deed of conveyance., The statute of limitation was tolled during the above-named dates, and the plaintiffs' actions are not barred by any statute of limitations.

(3) The Court holds that even if the grantor, Myrtie M. Mullins, were not found to be legally incompetent at the time she executed the deed of conveyance to the Lawsons on November 26, 1985, she was at that time a person of impaired mind and intelligence and diminished mental capacity and that her mental capacity in combination with the grossly inadequate consideration and absence of consideration received by her for valuable real estate created an inference of fraud or undue influence which was not overcome by the evidence of the grantees who had the burden of showing its fairness.

## Conclusion

The deed of conveyance from Myrtie M. Mullins to Dewey G. Lawson and Nancy L. Lawson, executed November 26, 1985, and recorded in the Clerk's Office of Scott County, Virginia, in Deed Book 351, page 205 et seq., conveying the real property therein described, is void and of no effect.