## CIRCUIT COURT OF THE CITY OF RICHMOND

Jean Kerrick-Williams

v.

Arvon C. Griffith

July 11, 1997

Case No. HH-399-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is brought in equity and seeks to have the court order that deeds[1] executed by the plaintiff conveying an interest in real estate to the defendant be set aside. The case was tried to the court without a jury.

The gravamen of plaintiff's claim for a set aside is that she was, in the words of an allegation in the Bill of Complaint, "not capable of understanding the nature and consequences of her acts at the time she signed the documents due to her mental and physical condition." The documents in question were all executed in the January to March 1994 time frame.

In support of her claim plaintiff presented her physician. He testified that plaintiff, a woman age sixty-two suffers from a multitude of ailments including diabetes, heart disease, hypertension, and diabetic neuropathy. He said plaintiff has been in severe pain since she came under his care in 1993 and during the times of execution of the documents at issue. The doctor said plaintiff was suffering from a very severe foot ulcer present in the early part of 1994 through March of that year for which he prescribed a number of medications. In January 1994 through March 1994, plaintiff was taking Darvocet, Percocet, and Restoril. A side effect of Darvocet is "sedation, euphoria, and dysphoria." The doctor further testified that a side effect of Restoril "potentiates" other medications and that all the drugs plaintiff was

---

[1] The deeds include two deeds of assumption, a Notice of Option and a deed. All concern plaintiff's residence.

taking at the time in combination can increase side effects. The doctor said in his estimation during the period of January 1994 to March 1994 plaintiff had impaired judgment "just from pain alone" and that the medications made her act as if she were "drunk and sometimes worse." He stated that, while her condition was not enough to call for the appointment of a guardian, her behavior now is very different than what it was then. Other witnesses testified that during March 1994 plaintiff was in great pain and acted bizarre and out of character.

Plaintiff testified that she came to know defendant through ham radio in the early part of 1993. Someone gave defendant her telephone number as a shut-in person and she and defendant first talked about setting up a museum for an old radio station. Defendant thereafter visited her to assist in her writing a will which would donate money for establishing the museum. She wrote a will in this way but has since revoked it and substituted another leaving her property to her sons and grandchildren. Plaintiff testified that thereafter defendant suggested and she consented to his assistance with paying her living expenses and managing her income.

There is a Deed of Assumption dated January 23, 1994, whereby plaintiff conveyed all her right, title, and interest to defendant. Plaintiff testified she does not recall signing this document. At that time, she was confined to bed and was "sick all of the time" with "pain, pain, pain." She related she does not remember signing another Deed of Assumption of the same date. This deed is the same as the first except that it mentions the address of plaintiff's home. She further stated that she does not remember signing another document called Notice of Option. This writing gives defendant the right "to control said property or to assign control thereof, to ... sell or anywise have dominion over said property in order to protect his interest ... ." Then there is the deed dated March 21, 1994, granting defendant a joint interest with survivorship which is the only writing put to record. She said she could have signed this so that defendant could take care of matters in the event of her incapacity or death but did not learn that defendant was the grantee until she saw a letter from the Health Department about overgrown grass. She said she later confronted defendant asserting that she had no idea that he was a grantee on the deed; his response was that all was done in her interest.

Defendant testified that after he became acquainted with plaintiff through ham radio and later met her in person, he determined that she needed someone "to be there for her," his intent was to act as a good samaritan, and the idea about all the deeds and options originated with her. He stated that while he paid for her medicines, bought food, and cut the grass, he never meant to act in a fiduciary capacity and never asked for payment for his services. He

further stated he did not know who drafted the documents, when or where they came from, and did not remember ever suggesting that plaintiff refinance the mortgage on her home.

Upon the conclusion of the presentation of the evidence, the court asked that the logs of the notary publics on the documents and who testified at the trial be produced. When the notaries public testified, the logs were shown to them and to the court but were not introduced into evidence. The court was caused to ask for the material because of the responses the defendant gave to questions of counsel and the court. By then, the notaries had testified and had left with their records. As noted, the defendant said he could not remember any of the circumstances surrounding the execution of the deeds. The logs were provided, and, over defendant's objection, the court has used them in consideration of the case.

One of the deeds in question, the one executed in March 1994 and the only one put to record gives defendant an interest in plaintiff's home as joint tenant with right of survivorship. The logs entitled Notary Guarantee Log list the date, customer name, type of identification, type of document, among other things in columns. The notaries, employees of a bank, both testified they had no independent recollection of plaintiff or defendant. The logs note both plaintiff and defendant by name as persons who appeared in connection with a deed on March 21, 1994.

For a deed to be valid, the grantor must be legally competent to execute the conveyance. 5C M.J., *Deeds*, § 6 (1983). Among the elements of competency is mental capacity. The test for determining whether a grantor has the requisite mental capacity to execute a deed is as follows: "the grantor must be capable of recollecting the property he is about to dispose of, the manner of the disposition, and the person to whom the conveyance is being made." *Id.* at § 7 (citation omitted). The capacity of the grantor is measured at the time the deed is executed. *Id.*

To apply this test, the Court must be mindful of certain presumptions that the law creates in these situations. If the grantee is a fiduciary of the grantor, the purported deed is presumed to be invalid, and the burden falls on the party trying to uphold the document to show that the grantor had the capacity to execute the deed. *See Waddy v. Grimes*, 154 Va. 615 (1930). However, if the grantee is not a fiduciary of the grantor, the presumption and the burden are precisely reversed — every person is presumed to be of sound mind, and the burden falls upon the party attacking the deed to show that the grantor did not have the requisite capacity. *See Brown v. Resort Devs.*, 238 Va. 527 (1989).

In this case, there is some evidence that defendant acted as a fiduciary for plaintiff. He paid her bills and handled her affairs for her. He bought her

medicines, bought her food, and cut her grass. He claims that everything he has done, including the transfer of the land in question, was done for plaintiff's benefit and in her interests. If this makes him her fiduciary, the burden would fall on him to show that, at the time the deeds were executed, plaintiff had the requisite mental capacity to transfer the land.

On the other hand, defendant claims that while he did do a lot to help plaintiff, he did it all as a good samaritan and not as a fiduciary. Certainly, no formal fiduciary relationship was ever established between the parties. As such, the burden would fall on plaintiff to show that she lacked the requisite mental capacity at the time the deeds were executed.

The Court finds that whether defendant was plaintiff's fiduciary is of no matter. If the burden was on defendant, he clearly failed to meet it by putting forth no evidence to support the claim that plaintiff was competent. Defendant himself testified that he cannot remember the circumstances surrounding the execution of the deeds. If, on the other hand the burden is on plaintiff, she has met it by producing evidence that she does not remember executing the deeds, that she was in severe and chronic pain at the time, that she was acting out of character, that she was on heavy medication and that she was not aware until after the Health Department contacted her that defendant was the grantee under a deed she executed. She has effectively rebutted any presumption in favor of her capacity and defendant has offered no evidence to counter that presented by plaintiff. As such, the Court finds that, as of the date they were executed, plaintiff lacked the requisite mental capacity to execute the deeds in dispute in this case.

Accordingly, the court concludes that the plaintiff is entitled to the relief prayed for.