## Richmond.

### JONES AND AL. V. ABRAHAM AND ALS.

#### April 21.

1. Though a plaintiff in his bill may disclaim the benefit of a discovery, he cannot thereby deprive the defendant of the right to answer on oath, and have the advantage of such answer as evidence in his favor so far as it is responsive to the bill. The case provided for by statute (Code of 1873, ch. 137, § 12) is exceptional.

2. The answer of a defendant which does not profess to be on his own knowledge, can only be treated as a plea of denial, and not as evidence in his behalf.

3. Although an answer responsive to the bill must be taken as true unless disproved by more than the testimony of one witness, this may be done not only by the testimony of two witnesses, but by one with corroborating circumstances, or by corroborating circumstances alone, or by documentary evidence alone.

4. A party participating with a trustee in a misappropriation of the trust fund is liable jointly and severally for the fund so misappropriated. And in this case held, upon the evidence, that there was such participation.

This was a suit in equity in the circuit court of Buckingham county, brought in April, 1872, by James E. Jones, trustee, and the said Jones in his own right, and his wife Ella J., against Anderson D. Abraham, former trustee of said Ella J. Jones, Alexander Moseley and the executors and heirs of Thomas M. Bondurant, deceased. The object of the suit was to subject the defendant Moseley and the estate of Bondurant to pay to Mrs. Jones' trust fund an amount of $4,184.31, which the plaintiffs charged that these

parties had combined with the trustee Abraham to use for their own purposes.

It appears that James E. Jones had sold to Alexander Moseley a farm on James river called "Fish Pond," and that he had conveyed upwards of $6,000 of the purchase money due upon the land in trust for the separate use of his wife Ella J. Jones, and previous to November, 1860, Abraham held this fund in his hands as said trustee. It appears further, that by deed dated January 4th, 1860, Abraham conveyed his land, slaves, stock of all kinds, plantation utensils, household and kitchen furniture, to Thomas M. Bondurant to secure a debt he owed him of $13,375.84, with interest from the first of July, 1859, and also to protect him as his surety in a debt due from Abraham to William B. Jones for $4,138, with interest, and also another debt to Christian. It appears further, that the debt due to William B. Jones was assigned by him to John Morris, and that Bondurant had recovered a judgment against Morris for $2,000, and interest, and had sued out execution thereon, which was in the hands of the sheriff. This debt amounted to $2,127.32, and was returned by the sheriff with the receipt of Bondurant endorsed thereon, bearing date the 14th of November, 1860, in which he says: "Rec'd of A. D. Abraham, through the hands of W. W. Forbes, sh'ff, an order on Alexander Moseley for $2,127.34, in full of the debt on the opposite side in my favor vs. John Morris."

At the time the execution aforesaid was in the hands of the sheriff, Morris executed a receipt written by the sheriff, as follows: "Received November 6th, 1860, of A. D. Abraham, through the hands of Thomas M. Bondurant, $2,127.34, on account of a bond executed to Wm. B. Jones by the said Abraham, Thos. M. Bondurant, and Wm. P. Hall, which said amount is also to be credited on the bond of this date." And in a statement of his debt and payment thereof filed

by Moseley with his answer, he is credited as of the 6th of November, 1860, with the sum of $2,127.34; and he files the receipt of Abraham, as trustee of Ella J. Jones, of that date, in which it is stated that the money is received through the hands of Thomas M. Bondurant. This sum of $2,127.34 is one of the subjects of his dispute.

It appears further from the said statement, and the receipt of Abraham, which bears date the 6th of December, 1860, that on that day Moseley paid to Abraham as trustee $2,056.99. And by a receipt of the same date Morris acknowledges the receipt from Abraham of A. Moseley's negotiable note, endorsed by Thomas M. Bondurant, dated the 6th of December, 1860, at four months, for $2,098.22, in full of the balance of the bond of Abraham, Bondurant and Hall, to Wm. B. Jones and assigned to him, and when the note was paid off it would be in full of said bond.

The cause came on to be heard on the 30th of January, 1877, when the court dismissed the bill as to Moseley, and the executors and heirs of Bondurant; and made a decree against Abraham for the amount of the trust fund in his hands, which a commissioner had reported to be $8,179.79, of which $4,184.31 was principal. And on the 29th of May, 1878, the cause came on to be heard on the papers formerly read, when no party or counsel appearing further to prosecute the case, it was removed from the docket. And thereupon James E. Jones and Peter A. Forbes, committee of Ella J. Jones, a lunatic, applied to a judge of this court for an appeal and *supersedeas;* which was awarded. The view of the pleadings and evidence taken by this court will be seen in the opinion of *Burks,* J.

*Robert T. Hubard,* for the appellants.

*Samuel D. Davies* and *J. Alfred Jones,* for the appellees.

BURKS, J., delivered the opinion of the court.

It is an undisputed fact in this cause, that Abraham appropriated upwards of $4,000 of the funds under his control as trustee for his daughter, Mrs. Jones, to the payment of his own debt to Morris, for which the late Thomas M. Bondurant was bound as surety. The statement in his answer that this was done with the consent of Mrs. Jones may be laid out of the case. We regard it as an affirmative averment in avoidance of the claim set up in the bill, and as there is not even a pretence of proof in support of it, it must go for nought. This appropriation by the trustee was a flagrant breach of trust on his part. The charge is, that Bondurant actively participated in it. If he did, he became liable equally with the trustee to account for the trust funds so misapplied. All who participate in a breach of trust are jointly and severally liable. *Barksdale and others* v. *Finney and others*, 14 Gratt. 333.

The charge is denied by Abraham in his answer. To the extent of the denial, the answer is responsive and is so far evidence for the respondent. This is so, although the bill does not call for an answer, but expressly waives it; for, where a bill is filed for relief, the complainant, according to the equity practice, cannot, by disclaiming the benefit of a discovery, deprive the defendant of the right to answer on oath and have the advantage of such answer as evidence in his favor, so far as it is responsive. Such is the settled rule in this State. *Thornton* v. *Gordon*, 2 Rob. R. 719; *Fant* v. *Miller & Mayhew*, 17 Gratt. 187, 206.

The case provided for by statute (Code of 1873, ch. 137, § 12) is exceptional.

The answer of Bondurant's representatives is not evidence in their behalf. It can be treated only as a plea of denial, for they do not profess to answer upon their own knowledge. On the contrary, they say that the transactions as to which they are called upon to respond took place, if at all, in the lifetime of their father and testator,

and that they have no personal knowledge of the same in any way whatever. According to them, however, the benefit of Abraham's answer, as far as it is responsive, the question is, has the denial of Bondurant's participation in the breach of trust been overcome by countervailing proof?

"The general rule," says Chief Justice Marshall, "that either two witnesses or one witness with probable circumstances will be required to outweigh an answer asserting a fact responsively to a bill, is admitted. The reason upon which the rule stands is this: The plaintiff calls upon the defendant to answer an allegation he makes, and thereby admits the answer to be evidence. If it is testimony, it is equal to the testimony of any other witness; and as the plaintiff cannot prevail if the balance of proof be not in his favor, he must have circumstances in addition to his single witness, in order to turn the balance. But," he adds, "*certainly there may be evidence arising from circumstances stronger than the testimony of any single witness.*" *Clark's Ex'ors* v. *Van Riemsdyk*, 9 Cranch. 158, 160. This case, among numerous others, is cited by the editor (1 Dan. Ch. Prac. 843, note 7, 4 Amer. Ed.) in support of the proposition, that "where a replication is put in and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill shall be taken as true, unless they are disproved by evidence of *greater weight than the testimony of a single witness*"—and that "this may result from the testimony of two witnesses; or of one with corroborating circumstances; or *from corroborating circumstances alone;* or *from documentary evidence alone.*"

Upon a careful examination of the record, we are of opinion that the statements of the answers, so far as they can be treated as evidence, are outweighed by the other evidence in the cause, and that Bondurant was an active participant in the breach of trust committed by Abraham, the trustee. The participation is established, we think, by the receipts and other papers in the record, and the facts and circumstances in proof.

The situation was this: Moseley was debtor to the trust estate for upwards of $5,000. Abraham (the trustee) was debtor individually to Morris for upwards of $4,000 by bond in which Bondurant (together with Hall) was bound as surety, and Morris was debtor to Bondurant for $2,000 (principal money) by judgment on which execution had been sued out and placed in the sheriff's hands. This judgment (principal, interest, costs and sheriff's commissions) amounted on the 6th day of November, 1860, to the sum of $2,127.32. It is proved that the judgment was "loaned" (that is the term used by the witness) by Bondurant to Abraham. For what purpose? And what use did Abraham make of it? The receipt from Morris to Abraham shows that on the said 6th day of November, 1860, Morris received, "through the hands of Thos. M. Bondurant," on account of the bond (already referred to) which he held on Abraham, Bondurant and Hall, the precise amount of the judgment (principal, interest, costs, and commissions).

There can be no doubt that this payment was by means of the judgment on Morris, which had been transferred by by Bondurant to Abraham. Thus Abraham became debtor to Bondurant for the amount of the judgment. Now, how did Abraham repay to Bondurant the amount of the judgment thus transferred and thus used? The receipts from Bondurant to the sheriff (Forbes) and from Abraham to Moseley show most clearly, we think, that Bondurant was reimbursed out of the trust funds in Moseley's hands. He took an order from Abraham on Moseley for the exact amount of the judgment, and Abraham gave his receipt to Moseley for precisely the same sum, bearing the same date with the receipt of Morris to Abraham, and stating that payment was received through the bonds of Bondurant.

The inference to be drawn from these receipts in connection with the proof of the transfer of the judgment to Abra-

ham, is well nigh irresistible, that Bondurant co-operated with Abraham in this wrongful appropriation of the trust funds to the payment of his own debt. *Res ipsa loquitur*. There is no other reasonable conclusion.

Abraham had been pecuniarily embarrased for several years, and was probably insolvent. Bondurant knew this; for there was a deed of trust on everything that Abraham owned to secure a large debt, some $13,000, due to Bondurant, and other debts, the Morris debt among them, in which Bondurant was bound as surety—the aggregate amount of indebtedness approximating $20,000, exclusive of interest. Abraham, Bondurant, and Moseley all lived in the same neighborhood; the latter two being kinsmen, were in the habit of endorsing and otherwise binding themselves for each other, and it cannot be reasonably doubted that Bondurant knew that the money thus appropriated was money of the trust estate. He had a strong motive to co-operate with the trustee in the matter, for he was thereby relieved *pro tanto* as surety for the Morris debt.

We look on the last payment on the Morris debt as of the same character with the first. It was but a consummation of the original purpose to discharge the entire debt from the trust funds in Moseley's hands. There was but a short interval of time between the payments. The last was made by the negotiable note of Moseley (the debtor of the trust estate), payable four months after date to the order of Bondurant, and endorsed by him. This is shown by the receipt of Morris to Abraham, dated December 6, 1860. On the same day Abraham gave his receipt as trustee to Moseley for an amount corresponding with the amount secured by the negotiable note, less the interest discounted for the time the note had to run. There can be no doubt that Moseley paid this note, for he was the debtor in it. Neither this note, nor the Morris bond, nor the order on Moseley for the money first paid by him, was produced in evidence. They

must, however, have all been paid, otherwise some claim would long since have been preferred by the holders. Moseley says that many of his papers were destroyed by the Federal troops during the war, and Bondurant's executors state that they have not seen any such writings among the papers of their testator. Moseley seems to have but little recollection of these transactions apart from the receipts which he took from Abraham. He says, however, that his dealings in the matters referred to were with him in his character of trustee only. The appellants, in the brief filed by their counsel, abandon all claim against Moseley on account of the money applied to the Morris debt, which is the only subject of controversy here, and confine their assignments of error to the decree so far as it respects the representatives of Bondurant.

We are of opinion, for the reasons stated, that the decree in that respect is erroneous, and should be reversed and the cause remanded to the circuit court for further proceedings to be had in conformity with the views hereinbefore expressed.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellee A. D. Abraham committed a breach of trust in appropriating the sum of four thousand one hundred and eighty-four dollars and thirty-one cents of the money in his hands or under his control as trustee of the appellant Ella J. Jones to the payment and satisfaction of his own debt to John Morris, for which debt Thomas M. Bondurant was bound as surety, and that the said Thomas M. Bondurant participated in said breach of

trust; and thereby the said Abraham and the said Bondurant became jointly and severally liable to the said Ella J. Jones for the said sum of money thus wrongfully appropriated, with interest thereon from the date of the appropriation till payment, and that the decree aforesaid rendered on the 29th day of May, 1878, is erroneous; and so much of the decree aforesaid rendered on the 30th day of January, 1877, as declares that the plaintiffs are not entitled to a recovery against the representatives of the said Thomas M. Bondurant, and orders the bills of the plaintiffs to be dismissed and the payment of costs by them, is also erroneous, so far as said decree and order of dismissal and payment of costs relate to the executors of said Bondurant; and so far as said decree is in any respect in conflict with the opinion of this court hereinbefore expressed, it is erroneous; therefore it is decreed and ordered, that the said decree of May 29, 1878, and also so much of the said decree of January 30, 1877, as is hereinbefore declared to be erroneous, be reversed and annulled, and the residue of the last-mentioned decree be affirmed; and that the appellees, Alexander J. Bondurant and William P. Hall, executors of Thomas M. Bondurant, deceased, do out of the estate of their testator, in their hands to be administered, pay to the appellants their costs by them expended in the prosecution of the appeal aforesaid here, and this cause is remanded to the said circuit court with directions to order all proper accounts in the cause, and further to proceed therein, in order to final decree, in conformity with the opinion and principles hereinbefore expressed and declared; which is ordered to be certified to the said circuit court of Buckingham county.

DECREE REVERSED.