Present: Carrico, C.J., Compton, Stephenson, Whiting,[*] Hassell and Keenan, JJ., and Cochran, Retired Justice

CRESTAR BANK

v.    Record No. 941300

GEOFFREY T. WILLIAMS, ET AL.

VIRGINIA S. SMITH
                              OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.    Record No. 941563            September 15, 1995

GEOFFREY T. WILLIAMS, ET AL.

THE RELIANT GROUP, L.P., ETC.

v.    Record No. 941574

JOSEPH P. BRACCO, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

These appeals stem from a trial court's decree in two consolidated chancery suits that, _inter alia_, granted a constructive trust in favor of 17 "investors" with reference to seven assets of a defaulting debtor. The constructive trust established priority of the investors' claims over those of certain of the debtor's judgment creditors.

The dispositive question on appeal is whether the court below erroneously declared a blanket constructive trust in favor of the investors when they failed to trace "invested" funds to the debtor's acquisition of any particular asset.

The pertinent facts are not in dispute. Generally between

_____

[*]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

1986 and 1990, at least 17 individuals, the investors, deposited sums of money with Geoffrey T. Williams, an Arlington attorney. Williams represented that his "net worth" was $5 million and that he would invest the funds and provide high returns on the investments, with little or no risk. He required a "minimum investment" of $10,000. The separate agreements between Williams and the individuals generally provided that the investment funds would be used to acquire real estate, or other interests, that the funds could be withdrawn upon demand, and that the return would be at least 13.5%. Some investors received promissory notes, others did not.

Williams "jumbled" the investors' deposits together with the funds of his law practice and other real estate investments. He issued periodic statements of account balances to his "family of investors" and, in some cases, permitted withdrawals. During this period, Williams borrowed millions of dollars from commercial and private lenders, acquiring many assets.

By 1990, Williams did not allow withdrawals from the investors' accounts. Thereafter, he rarely came to his Arlington law office, instead communicating by courier and by mail from an address in Maryland. In February 1992, he fled the Commonwealth leaving many creditors, after a capias was issued in his divorce case for his arrest. In July 1992, Williams arranged for the removal of all his financial records from his bookkeeper's home. The whereabouts of the records and Williams is unknown. Sums

owed the investors range from approximately $15,000 to $100,000 each.

In 1992, the 17 disappointed investors filed the present suits, labelled "creditors bills," seeking monetary and other relief. They alleged that Williams breached his agreement to invest their funds at a guaranteed return and sought, inter alia, a constructive trust upon certain of Williams' property. The seven assets involved in this appeal are four parcels of real property titled in the name of Williams as trustee (or his sister, Constance Rogers-Panos), two partnership interests held by "Williams, Trustee," and one partnership interest titled in the name of Williams individually. Named as defendants, either initially or through amendment to the suits, were many of Williams' judgment creditors.

Also named as a defendant was Williams individually and as trustee. During the course of the litigation, Williams, who did not personally appear, filed a stipulation stating that he had been properly served with process and that the trial court had personal jurisdiction over him. In the stipulation, the investors withdrew a claim for punitive damages against Williams.

After consolidation of the suits below, the matter was referred to a commissioner in chancery who held six hearings during the period September 1992 to December 1993. In a March 1994 report, the commissioner recommended, inter alia, imposition of a blanket constructive trust upon the seven properties with

the 17 investors as beneficiaries.  The commissioner found that the constructive trust had priority over all record judgment creditors and over a charging order entered against one of Williams' partnership interests.  See Code § 50-28 (upon application by judgment creditor of a partner, court may charge the interest of the debtor partner with payment of unsatisfied amount of judgment).  In addition, the commissioner recommended that money judgments be entered in favor of the investors against Williams individually and as trustee, and that charging orders be entered against certain of Williams' partnership interests. Exceptions were filed to the commissioner's report.  A common ground of the exceptions filed by each of the present appellants was that the commissioner's recommendation regarding imposition of a constructive trust was erroneous because the investors failed to show by clear and convincing proof a tracing of funds to particular assets.

In a June 1994 decree from which these appeals are prosecuted, the trial court generally confirmed the commissioner's report.  The court found that Williams owed a total of $449,789.83 to the investors from whom he had obtained funds during the period in question.  The court entered money judgments in favor of each investor for the amount of their loss against Williams individually and as trustee.  The court "granted a constructive trust" in the investors' favor against the seven properties and interests.  The court ordered that "these

constructive trusts are held" by the investors "pro rata in proportion to their judgments" against Williams and that the trusts "are liens superior to judgments against Geoffrey T. Williams, either individually and as trustee." The court also ordered, as recommended by the commissioner, sale of the realty subject to the priorities the court had established, and that the proceeds be applied to the discharge of the judgments, pursuant to Code § 8.01-462, finding that the rents and profits of the realty subject to the judgment liens would not satisfy the judgments in five years.

Three of the creditors appeal. Appellant Crestar Bank, successor by merger to one of Williams' judgment creditors, had a charging order against a partnership interest of Williams and its judgments docketed against real estate displaced by the trial court's imposition of the constructive trust.

Appellant Virginia Seekford Smith had her interest in a condominium unit and a general partnership displaced by the imposition of the constructive trust. Appellant The Reliant Group is the successor in interest to the holder of a recorded judgment lien in the principal amount of $277,475.51 displaced by the trial court's ruling.

The investors have not appeared in these appeals beyond the petition stage; they elected neither to file appellate briefs nor to participate in oral argument. Instead, they filed in this Court a suggestion of mootness with reference to a number of the

appellants' assignments of error because, they assert, "most of the assets subject to the constructive trust imposed by the Circuit Court are no longer available to apply to the judgments obtained" by them. The appellants have not joined in the suggestion, and we shall disregard it. There is no proof in the appellate record to sustain the claim of mootness.

A constructive trust arises by operation of law, independently of the intention of the parties, in order to prevent what otherwise would be a fraud. Leonard v. Counts, 221 Va. 582, 589, 272 S.E.2d 190, 195 (1980). Such a trust may be established not only when property has been acquired by fraud or improper means, but also when it has been properly acquired but it is contrary to equitable principles that the property should be retained, at least for the acquirer's own benefit. Id. Accord Jones v. Harrison, 250 Va. 64, 70, 458 S.E.2d 766, 770 (1995). The evidence required to establish a constructive trust must be clear and convincing. Cooper v. Cooper, 249 Va. 511, 517, 457 S.E.2d 88, 92 (1995).

Moreover, in order to be entitled to the benefit of a constructive trust, a claimant's money must be "distinctly traced" into the chose in action, fund, or other property which is to be made the subject of the trust. Watts v. Newberry, 107 Va. 233, 240, 57 S.E. 657, 659 (1907). See Cooper, 249 Va. at 517-19, 457 S.E.2d at 92-93.

And, notwithstanding the weight ordinarily given a

commissioner's report confirmed by the chancellor, and the respect that is accorded to the findings, no judgment based thereon will be affirmed on appeal when the findings are unsupported by the record. Clevinger v. County School Board of Buchanan County, 139 Va. 444, 447, 124 S.E. 440, 441 (1924). This is such a case.

The record is devoid of proof, by clear and convincing evidence, distinctly tracing the investors' money into any of the properties that are the subject of the constructive trust. Thus, the claim of each investor-beneficiary for breach of trust becomes merely that of a general creditor.

For example, investor John Baird testified that Williams "never told me that he was going to use my specific money to invest in real estate." Williams presided over a meeting of some of the investors in January 1989. There, he presented to those in attendance a long list, heavily relied upon below by the investors, of purported investments in local bank stocks, publicly traded stocks, real estate, and pizza shops. But that document fails to show which investment related to any particular investor in any particular proportion.

Also, investor Joseph Bracco, who had been one of Williams' clients and who innocently interested friends and relatives in Williams' "enterprise," testified that he understood from the January 1989 meeting that about $130,000 of his funds were invested by Williams in real estate, but he did not identify

specific sums used to purchase specific assets.

In addition, investor Rodger Hicks testified that Williams made "no provision" to advise him what properties Hicks' funds "would be invested in."  Also, investor Patrick Glott, who attended the 1989 meeting, testified he merely "drew the assumption" that his "investment money was being directed to" the properties on the list.  The testimony of the remaining investors was equally vague and nonspecific.

In sum, the record is clear that the investors' funds were hopelessly commingled and not traceable.  The funds were not earmarked for the acquisition of specific property, and there is no documentary evidence to identify the amount of each investor's money that was used in the acquisition of any specific asset. The record shows that Williams had the general authority to invest and divest the pooled funds in a variety of ventures at his sole discretion, and that the investors had no idea how their funds were being used other than a general understanding that the funds might be used to acquire real estate and other investments. Because of the failure of the investors to satisfy the tracing requirement for imposition of a constructive trust, the property in question titled in the name of Williams or Williams as trustee is subject to the lien of all valid record judgments against him.

Appellant Virginia Seekford Smith, while joining the other appellants' argument on the tracing issue, raises two additional issues in her appeal.  She is interested in two of the properties

in question:  Unit 812 of The Representative condominium, located in Arlington County; and Lee Stafford Associates partnership, an investment trust.

Smith, co-owner of an Arlington real estate company, engaged "in a number of business deals" with Williams from 1986 to 1992.  Although not a member of Williams' "family of investors," Smith advanced funds to Williams during the period 1987 to 1991 totalling $327,904.29, plus interest, accepting unsecured notes for some of the obligations.  When Williams failed to repay the loans, Smith threatened suit.  In exchange for her forbearance to sue, Williams executed several additional notes, one secured by a deed of trust on Unit 812 in the amount of $50,000 in 1991.

The trial court implicitly confirmed the commissioner's finding that the sum of $50,000 represented money "Smith had lent Williams over a period of time and had nothing to do with" Unit 812.  The commissioner merely found, however, "that the constructive trust is superior to said deed of trust."

On appeal, Smith seems to argue that the trial court expressly invalidated the $50,000 deed of trust on Unit 812.  We find no such specific ruling either in the commissioner's report or in the decree confirming it.  The commissioner only ruled that the constructive trust was superior to "said deed of trust."  Our ruling on the tracing issue affords Smith all the relief to which she is entitled regarding Unit 812 based on this record.

Regarding the Lee Stafford Associates partnership, the

commissioner found that Williams as trustee had a 12% interest. The interest originally had been 4%, but he purchased an additional 8% with $75,000 Smith "gave" him. The partnership agreement required consent of a majority of the voting partners for a transfer of an interest in the entity. To avoid this requirement, Smith entered into a side, joint venture agreement with Williams whereby she would receive a 4% interest in the partnership, representing $37,500 of the "loan" to Williams. According to the commissioner, Williams agreed to repay Smith "the balance he had borrowed, $37,500." The commissioner found, and the trial court confirmed, that Smith was entitled to a 4% interest in the entity and the remaining 8% interest was subject to the constructive trust.

On appeal, Smith contends she should be awarded an additional 4% interest in the Lee Stafford partnership. We disagree. We cannot say that the commissioner's finding is unsupported by the facts and reasonable inferences to be drawn from those facts.

Finally, Smith assigns error to the failure of the commissioner and the trial court to rule upon a statute of limitations defense she raised at every stage of the proceedings. She contends that "a substantial portion" of the investors' claims are time barred. She argues that many of the investors received demand notes from Williams in exchange for their money, none of which stated a date for final payment of the note. She

says that others sued upon agreements not reduced to writing. Asserting that as a "co-creditor" she may rely on the bar of the statute of limitations in a creditor's suit, Smith asks that the trial court be ordered to determine the applicability of the statute of limitations to each of the investor's claims. We decline this request.

The investors' suits were not based upon demand notes but upon the continuing relationship between themselves and Williams as their fiduciary in the investment of their funds. The trial court acknowledged this relationship in a colloquy during Smith's oral argument on the exceptions in June 1994. This continuing relationship did not end until Williams fled the Commonwealth and ceased to render monthly statements of account in early 1992, shortly before the first suit was filed in July 1992. Thus, no purpose will be served by a remand on the statute of limitations issue; the suits clearly were timely. See Keller v. Denny, 232 Va. 512, 516-19, 352 S.E.2d 327, 329-31 (1987).

Consequently, the decree from which the appeals are taken will be affirmed in part, reversed in part, and remanded. The money judgments entered in favor of the investors, set forth in paragraphs 1 through 11 on the first three pages of the decree, will be affirmed. The constructive trust against the subject properties and interests set forth in paragraphs 1 through 7 on the third and fourth pages of the decree will be reversed and annulled.

The unappealed ruling voiding certain deeds to Constance Rogers-Panos, the ruling on Smith's 4% interest in Lee Stafford Associates, and the unappealed ruling awarding a charging order against Williams' interest in certain of the properties, all set forth on the fourth page of the decree, will be affirmed.

The finding that the rents and profits from the subject properties will not satisfy the judgments in a five-year period (and the order for sale of the properties, execution of the charging orders, and appointment of special commissioners of sale), set forth on the fifth page of the decree, will be set aside and annulled because there is no evidence in the record to support that finding.

The unappealed orders for reimbursement of costs, for award of costs for title examination and photocopies, and quashing of a lis pendens, set forth on the fifth page of the decree, will be affirmed.  Smith's request for an award of attorney's fees will be denied.

Because the decree appealed from did not end the causes and strike them from the docket, although it did adjudicate the principles of the causes, the matters will be remanded for entry of a decree, not inconsistent with this opinion, which ends the causes.

<u>Affirmed in part, reversed in part, and remanded</u>.