**CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND JAMES CITY COUNTY**

Gregory Domurat
and Barbara Domurat

    v.

Timothy Rupon,
Jeremy Rupon,
and Virginia Rupon

September 9, 1996

Case No. (Chancery) 11544

By Judge William L. Person, Jr.

The defendants Virginia, Timothy, and Jeremy Rupon filed a demurrer to complainants Gregory and Barbara Domurat's Bill of Complaint in which the Domurats asked the court to impose a constructive trust and to grant a money judgment against the defendants for a loan made by the Domurats to Robert Rupon. For the reasons stated below, the court will sustain the demurrer on the allegations set out in the Bill of Complaint for a money judgment and overrule the demurrer on the allegation for a constructive trust against these three defendants.

### Standard for a Demurrer

A demurrer shall be sustained if the plaintiff's pleadings do not state a cause of action or fail to state facts upon which relief can be granted. Virginia Code § 8.01-273. For the purposes of a demurrer, the facts alleged in the motion for judgment are admitted, and "all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

The Virginia Supreme Court has explained further that "When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand the demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993).

## Facts

The following facts are those alleged in the Bill of Complaint.

Between August 24, 1994, and February 17, 1995, the Domurats made five disbursements of a loan to Robert Rupon. The total principal amount of the loan was $18,560.00. The complainants made the loan to Rupon in reliance upon his assertions that the money would be used to pay for house closing costs and to preserve the equity in his home. Rupon never told the complainants that he was under bankruptcy protection when he requested the money. Rupon was not purchasing the house but was renting it and was constantly behind in his rent payments.

On May 30, 1995, Rupon promised in writing to repay the Domurats $25,000.00. The $25,000.00 was not paid back, and Robert Rupon refuses to repay it. Rupon's failure to repay the loan has caused the Domurats financial hardship.

Robert Rupon is Virginia Rupon's husband and the father of Jeremy and Timothy Rupon. Virginia, Jeremy, and Timothy Rupon have benefitted from the loan by living a luxurious and opulent lifestyle and because they hold funds as a result of the loan to Robert Rupon.

The complainants ask for the court to impose a constructive trust on the three defendants, Virginia, Timothy, and Jeremy Rupon, and they ask for a money judgment against those defendants for the amount not recovered from a constructive trust imposed against them or Robert Rupon. Robert Rupon's fraudulent inducement of a loan from the Domurats is the wrong upon which the Domurats' claim against these defendants is based.

## Constructive Trusts

The Domurats have alleged that Robert Rupon fraudulently obtained a loan from them. They allege that he misused the funds and gave funds from that loan to these defendants. Further, they allege that these defendants hold those funds. Based on those allegations, the Domurats ask for a constructive trust to be imposed on the funds held by these defendants.

The defendants argue that the complainants did not address the elements of the constructive trust cause of action. The Domurats' brief cites *Sweeney v. Patton*, 134 Va. 117 (1992), to explain that constructive trusts are flexible remedies to be applied whenever necessary to avoid injustice. Following the lead of the Virginia Supreme Court in recent Virginia cases imposing constructive trusts, the Domurats also rely upon a passage from *Leonard v. Counts*, 221 Va. 582, 589, 272 S.E.2d 190 (1980), where the court summarized the general application of constructive trusts:

> Constructive trusts arise, independently of the intention of the parties, by construction of the law; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise would be a fraud. They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.

In *McKee v. Paradise*, 299 U.S. 119, 122, 57 S. Ct. 124, 125, 81 L. Ed. 75 (1936), the Supreme Court held that a constructive trust could not be based in the "mere failure to pay a debt." In the present case, the claim is not a mere failure to repay a loan but alleges the fraudulent inducement of the loan. That allegation brings the complainant's claim within the scope of constructive trusts if sufficient facts are alleged to support the claim of fraud. The elements of fraud are "an intentional, knowing misrepresentation by the defendant of a material fact upon which the plaintiff has relied to his detriment." *Cheatle v. Rudd's Swimming Pool Supply*, 234 Va. 207, 215, 360 S.E.2d 828 (1987).

The Domurats do allege that Robert Rupon withheld the information that he was in bankruptcy, misrepresented the purpose of the loan, and that they relied on that misrepresentation to their detriment. Those allegations are sufficient to maintain the claim of fraud upon which the Domurats base the constructive trust.

These three defendants argue that no fraud is alleged against them. That allegation is not necessary. Constructive trusts have been imposed on third parties based on the wrong of another. It was recently explained in *Jones v. Harrison*, 250 Va. 64, 69, 458 S.E.2d 766 (1995), that:

> When property is given or devised to a defendant in breach of a donor's or testator's contract with a plaintiff, equity will impose a constructive trust upon that property in the hands of the recipi-

ent even though (1) the transfer is not the result of breach of a fiduciary duty or an actual or constructive fraud . . . and (2) the donee or devisee had no knowledge of the wrongdoing or breach of contract.

The Domurats have pleaded that Robert Rupon gave these defendants funds in breach of their agreement and that they *hold* the funds. It is not alleged that these defendants had notice of the breach, but under *Jones v. Harrison*, notice is not necessary for the imposition of a constructive trust.

The defendants also argue that the complainants have not specifically traced to the defendants any property which may be subject to a trust. They cite *Crestar Bank v. Williams*, 250 Va. 198, 462 S.E.2d 333 (1995). In that case, the court rejected the imposition of a constructive trust where the record was "devoid of proof, by clear and convincing evidence, distinctly tracing the investor's money" into any property held by the defendant. *Id.* at 204.

*Crestar Bank* was an appeal of a trial court decision where tracing needed to be proved. The present case, however, is before the court on a demurrer. The Domurats allege that these defendants hold funds from the fraudulently obtained loan. On a demurrer, it is enough that they make that allegation; proof of tracing is not required.

### Money Judgment in Joint and Several Liability

The complainants ask for a money judgment against these three defendants in joint and several liability "as trustees, for any amounts not recovered from the entrusted assets." The Domurats again allege that Robert Rupon fraudulently induced a loan agreement from them and that these defendants hold funds from that loan in breach of trust. The Domurats also allege that these defendants benefitted from the loan by living in a "luxurious and opulent lifestyle" and because they "hold and did hold funds." Implicit in that language is the allegation that some of the loan money was spent and some was retained by the defendants.

The general rule regarding the liability of third parties in a money judgment for the breach of a trust was stated in *Jones v. Abraham*, 75 Va. 466 (1881). Defendant Bondurant received funds from Abraham knowing that Abraham was misusing those funds, which Abraham held in trust for his daughter. The court held that "All who participate in a breach of trust are jointly and severally liable." *Id.* at 469. The decision did not explain what the phrase "participate in a breach of trust" means, but the court

clearly noted the importance of whether Bondurant had notice of the breach and of the fact that his actions furthered the breach.[1]

Neither party to this case has made an argument on the money judgment issue. A money judgment claim is very different from a constructive trust claim. For example, the beneficiary of a trust is a preferred creditor, while the winner of a money judgment is a general creditor. *Crestar Bank v. Williams*, 250 Va. 198, 462 S.E.2d 333 (1995). Specific funds must be traced to obtain a constructive trust, while no tracing is necessary to win a money judgment. *Id.* In the present case, the most crucial difference between the two is that no notice is required for the imposition of a constructive trust, as discussed above, but notice is required for the imposition of a money judgment in joint and several liability. *Jones v. Abraham*, 75 Va. 466.

In *Crestar Bank v. Williams*, the court rejected the imposition of a constructive trust and instead imposed a money judgment; however, the court did not clearly map out its reasoning. It cannot be assumed that the money judgment was merely a downgrading of the failed constructive trust claim. In that case, Williams had notice that he was participating in a breach of trust and was therefore liable under *Jones v. Abraham* for the distinct claim for a money judgment.

There appears to be no Virginia Supreme Court decisions which examine money judgments against third party defendants who have disposed of funds without notice that they did so in breach of a trust. However, Virginia cases, as shown above, do consider notice when determining the liability of defendants for money judgments. In that respect, it is appropriate to examine decisions from outside the state which consider this issue.

In New York, the Court of Appeals affirmed the holding in *Seagle v. Barreto*, 132 N.E. 899, 231 N.Y. 586 (1921) *aff'd per curiam*, 179 N.Y.S. 857 (1920). In that case, Mr. Barreto, in breach of a trust, put money in his wife's bank account. Mrs. Barreto spent the money, the majority of it on household expenses. The plaintiff gave no evidence of notice. The court held that "the plaintiff was obliged to show notice and demand while she

---

[1] It has been explained that "The wrong of participation in a breach of trust can be divided into two elements: (1) an act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that the transaction amounted to a breach of trust, or the legal equivalent of such knowledge." Bogert, *The Law of Trusts and Trustees*, rev. 2d ed., § 901 (1982).

had the money in her possession, to justify recovery against her personally." *Id.* at 858. The court noted that its decision would probably have been unchanged if Mrs. Barreto had spent the money for her own purposes instead of on household expenses.

The present case is very similar to *Seagle v. Barreto.* The Domurats' Bill of Complaint did not allege that these three defendants had notice that any money they may have received was received in breach of trust. The complaint did allege that the fund was spent to give these defendants a luxurious lifestyle, but that allegation does not damage these defendants because it fails to allege either that these defendants spent or hold the money and that they did so with notice. Both allegations are necessary for stating a claim for a money judgment in this case.

Under *Jones v. Abraham,* notice of the participation in a breach of trust emerges as an element necessary for a money judgment. In *Crestar Bank v. Williams,* Williams had notice of his participation in the breach of trust. In *Seagle v. Barreto,* notice was a required element. In the present case, the Domurats do not allege that these defendants knew that they were participating in a breach of trust by holding funds. No notice has been alleged; therefore, the money judgment claim had not been sufficiently pleaded. The demurrer of the money judgment against these defendants is sustained.

## Conclusion

Having measured the allegations of the complainants against the standard of review for a demurrer, the court will overrule the demurrer to the claim for a constructive trust on the monies alleged to be held by Virginia, Timothy, and Jeremy Rupon and will sustain the demurrer to the claim for a money judgment against those defendants.