## Samuel R. Brown, II, Executor, etc.

### v.

## Resort Developments

Record No. 880732

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Samuel R. Brown, II (Epps & Brown,* on brief), for appellant.
*Thomas S. Carnes (Guy, Cromwell, Betz & Lustig,* on brief), for appellee.

Justice Compton delivered the opinion of the Court.

The sole issue on appeal in this chancery proceeding is whether the trial court correctly ruled that a grantor possessed the mental capacity to execute a valid deed.

On September 19, 1986, Edith Hatchel, the grantor, a widow 72 years of age, executed a deed to appellee Resort Developments, the grantee, conveying four parcels of real estate located in the City of Virginia Beach for a total sales price of $70,000. On November 10, 1986, the court below appointed Ardelle Grimes, a niece of the grantor, as guardian for the person and estate of Hatchel. The court found, following an October 17, 1986 hearing on the guardianship petition filed by the City Department of Social Services, that Hatchel "is incapacitated by reason of mental illness."

In January 1987, the guardian filed the instant bill of complaint seeking to have the deed "set aside and declared void and invalid." The sole ground of relief was that the grantor "because of her advanced age and impaired health was not mentally able to

understand the nature of the deed she signed." The guardian did not allege that the grantor had been subjected to either undue influence or constructive fraud.

Subsequently, the chancellor referred the matter to a commissioner in chancery, who held a hearing in September 1987. On conflicting evidence, the commissioner found the guardian had failed to prove that the grantor was incompetent at the time she signed the deed and that she was mentally unable to understand the nature of the instrument.

The guardian filed exceptions to the report, which the trial court overruled after considering argument of counsel. The chancellor confirmed the report, noting that the court "carefully reviewed and weighed the evidence presented, and reviewed and examined the conclusions of said Commissioner." We awarded the guardian this appeal from the March 1988 final decree entered in favor of the grantee. Later, the grantor died; upon suggestion of the death, we ordered the executor of Hatchel's estate to be substituted as the appellant in this proceeding. *See* Code § 8.01-20.

In a suit to invalidate a deed upon the ground of mental incapacity, the applicable law is settled. Every person is presumed to be of sound mind, and the burden is upon the party who alleges to the contrary to establish such charge. *Howard* v. *Howard*, 112 Va. 566, 568, 72 S.E. 133, 133 (1911). The test for determining whether one lacks sufficient capacity to become bound absolutely by deed or contract is whether, at the time the instrument was executed, the grantor possessed sufficient mental capacity to understand the nature of the transaction and to agree to its provisions. *Lohman* v. *Sherwood*, 181 Va. 594, 607, 26 S.E.2d 74, 79-80 (1943). Mental ability varies from one individual to another; therefore, no specific degree of mental acuteness is to be prescribed as the measure of one's capacity to execute a deed. *McGrue* v. *Brownfield*, 202 Va. 418, 425, 117 S.E.2d 701, 706 (1961). And, when mental capacity is in issue, the outcome of every case must depend mainly on the facts surrounding the execution of the deed in question. *Id.* at 424, 117 S.E.2d at 706. Hence, the testimony of witnesses who were present when the instrument was executed is entitled to greater weight than the testimony of those witnesses not present. *Howard*, 112 Va. at 570, 72 S.E. at 134.

In the present case, a detailed recitation of the conflicting evidence is unnecessary. Under established principles of appellate

review, the judgment below is presumed to be correct, especially where, as here, the finding of the commissioner who heard the testimony ore tenus has been confirmed by the chancellor. As we shall demonstrate, the record fully supports the commissioner's finding.

In her attempt to prove the grantor's incapacity, the guardian presented evidence that during periods before and after execution of the deed Hatchel was disoriented, confused, and unable to understand any written instrument. According to the testimony, the grantor's mental condition had begun deteriorating shortly before her retirement in 1984 from city employment. Witnesses related instances of bizarre conduct by the grantor including a time in 1985 when she travelled to Norfolk for a party and later was found near Richmond when she intended to return to her home in Virginia Beach.

A number of witnesses for the guardian opined that the grantor was incapable of understanding or agreeing to the provisions of a deed in September 1986. For example, a psychologist, who had evaluated the grantor in connection with the guardianship proceeding, testified that based on available information, including a conversation with the grantor on October 13, 1986, "I don't think there's any way this lady could have understood what she was doing" at the time the deed was executed.

None of the guardian's witnesses who testified about the grantor's incapacity were present at the closing of the land transaction when the deed was executed, except the grantor. During her testimony before the commissioner in September 1987, a year after the closing, the grantor made generally nonsensical statements.

In contrast to the evidence offered on behalf of the guardian, the grantee presented the testimony of three persons who attended the closing, held in the law office of the grantee's attorney. Present at the closing were the grantor, a male friend who lived in her home, the grantor's attorney, the grantee's attorney, and the real estate agent who negotiated the transaction for the grantee. According to that testimony, every document considered or executed during the closing was explained in detail to the grantor, and she appeared to understand the entire transaction and the associated papers, including the deed.

The grantor's attorney testified that he met his client on at least two occasions prior to closing and that her mental awareness during these meetings was "good." At the time of closing, the attor-

ney testified, the grantor "knew what was going on" and understood that she was conveying her property in accordance with her desires. The grantee's attorney testified that during the closing, which lasted about 45 minutes to an hour, there was "no doubt" in his mind that the grantor "knew what was going on and was cognizant of what she was doing." The attorney testified that the whole transaction was "absolutely explained to a dead certainty" and that she "definitely" appeared to understand the explanation. The commissioner reported: "Both of the attorneys present at the settlement enjoy impeccable reputations."

The real estate agent had dealt with the grantor for months before she executed the contract of sale for the property in July 1986. He testified that, at closing, she understood she was signing a deed to property which included her home and that she was mentally capable of understanding the nature of her act.

■ In his appellate argument, the executor treats the case as if the guardian had sought relief upon the ground of undue influence. As we have said, only lack of mental capacity was pled, a matter conceded during argument before the chancellor. Persisting on appeal to discuss undue influence, however, the executor focuses on one of the elements of such a claim, *i.e.* a showing of the grantor's "great weakness of mind," *see Martin* v. *Phillips*, 235 Va. 523, 527, 369 S.E.2d 397, 399 (1988). Specifically, the executor contends, he should prevail on a claim of incapacity because the trial court found, both from the bench and in the final decree, that the grantor "had great weakness of mind during the period when the subject contract and deed were executed." We reject such a contention.

■ Mental weakness alone will not invalidate an instrument because courts do not engage in measuring "the size of peoples' understanding or capacities." *Lohman*, 181 Va. at 607, 26 S.E.2d at 80. Therefore, in the context of a suit like this based solely on lack of mental capacity to execute a deed, proof of "great weakness of mind" is insufficient to establish mental incapacity. In other words, a person may have great weakness of mind yet may possess sufficient mental capacity to understand the nature of the transaction and to assent to the provisions of the challenged instrument. Thus, the trial court's finding of "great weakness of mind" is not inconsistent with its confirmation of the commissioner's report.

For these reasons, we hold that the trial court did not err in refusing to invalidate the deed in question. Therefore, the trial court's final decree will be

*Affirmed.*