GARY ALLEN COOPER, CO-EXECUTOR OF
THE ESTATE OF GARY D. COOPER, DECEASED

V.

MARGARET A. COOPER, ET AL.

Record No. 941137

April 21, 1995

Present: All the Justices

*James F. Andrews (Lavenstein & Andrews,* on briefs), for appellant.

*John E. Slough* for appellee Margaret A. Cooper.

*(R. Frazier Solsberry),* for appellee Gary D. Cooper, II, Co-executor, etc.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we consider whether the trial court erred in imposing a constructive trust on the proceeds of a promissory note for the benefit of the deceased noteholder's widow.

Margaret A. Cooper filed a bill of complaint against Gary Allen Cooper and Gary D. Cooper, II, co-executors of the estate of Gary D. Cooper, her deceased husband. She sought the imposition of a constructive or resulting trust in her favor on the proceeds of a promissory note on which her deceased husband was the payee. Margaret alleged that, in 1976, her husband used money from their joint bank account to purchase stock in a new business, Liberty Land, Ltd. (Liberty). Eight years later, her husband sold the stock, taking in exchange a promissory note from Liberty in the amount of $730,000 for the purchase price balance. Margaret contended that she was entitled to the proceeds of the note based on her husband's representation to her in 1976 that he would consider the proceeds from the business venture as the property of both spouses or the survivor of the two.

The trial court referred the matter to a commissioner in chancery. Following a hearing at which Margaret Cooper and Gary Allen Cooper testified, the commissioner issued his report recommending that the trial court impose a constructive trust in favor of Margaret on the proceeds of the promissory note. The commissioner based his recommendation on his finding that Margaret had shown by clear and convincing evidence that the funds used to purchase the Liberty stock were taken from Margaret and Gary's joint bank account to which there was a right of survivorship and that Margaret and her husband had "entered into a joint venture with funds belonging to them both and that profits derived from the joint venture were to be held by the decedent Cooper for the benefit of both or the survivor of them." The trial court overruled the exceptions to the commissioner's report filed by Gary Cooper's

estate and entered an order adopting the commissioner's report and imposing a constructive trust in favor of Margaret on the proceeds of the promissory note. We awarded Gary Allen Cooper, co-executor (the estate) an appeal.[1]

We recite the facts, as we must, in the light most favorable to Margaret, the prevailing party below. Margaret and Gary Cooper were married in 1964. At that time, they both worked for the same employer. Because their employer had a policy prohibiting employment of both a husband and wife, Margaret was forced to find other employment. After she worked for a group of physicians for approximately six months, Margaret and Gary went into business ventures making fiberglass bathtubs and dune buggies. This venture lasted for approximately four years. The couple then bought small farms, improved them, and resold them. The properties purchased were titled in Gary's name or jointly with a partner. Margaret assisted in the work on the properties, but was not otherwise employed.

In 1976, Gary told Margaret that he wanted to form a land development corporation. Margaret testified that Gary told her that, if she would agree to the use of joint funds for the initial investment, he would treat the proceeds from the venture as joint funds held for them both or the survivor of them. She agreed. A check was drawn on their joint account, Liberty was incorporated, and Gary purchased shares in the corporation. The stock was titled in Gary's name.

In the course of its operation, the corporation borrowed funds to support its activities. Margaret participated in securing these loans from the lending institutions. She agreed to unconditionally guarantee loans for $175,000 and $166,000 and to be obligated on a line of credit for $465,000. One of the loans was also secured by a second deed of trust on Margaret and Gary's home, which they held as tenants by the entirety. When Gary bought out Liberty's other stockholder, Harold G. Payne, Margaret executed an indemnification agreement in which she agreed to personally indemnify and hold Payne harmless from any obligations of Liberty. She also executed a joint and several payment guarantee for Liberty's

---

[1] Both executors are sons of the decedent. Gary Allen Cooper is Margaret Cooper's stepson and Gary D. Cooper, II is her son. At trial, co-executor Gary D. Cooper, II, filed an answer to the bill of complaint in which he did not object to the relief sought by Margaret. He did not join in the appeal filed by co-executor Gary Allen Cooper but filed a brief adopting the position taken by Margaret.

$50,000 bond to Payne. Throughout the course of Margaret's and Gary's involvement with Liberty, Margaret performed various functions in connection with the sale of the developed properties, such as preparing model homes and yards. She also was the secretary of the corporation for several years.

In 1984, Gary sold his stock back to Liberty for $730,230. Payment for the stock was in the form of a promissory note from Liberty, payable in installments from December 31, 1984 through December 31, 1994. The note was in Gary's name only.

In October 1990, Gary left the marital home and moved to Texas. He subsequently executed a will, leaving his property to his two sons. Four months later, on February 16, 1991, Gary died. Margaret testified that he had been planning to return home.

Following Gary's death, the estate inventory listed the note as an asset of his estate with a balance of $298,214.29. Gary Allen Cooper, as co-executor, testified that, at the time of the hearing, he had received over $10,000 in payments on this note which he had used to pay some of the expenses of the estate.

On appeal, the estate assigns nine errors, but notes that "Margaret bases her case in significant measure upon the statement which she claimed Gary made in 1976." Thus, we first consider whether Margaret produced sufficient evidence to corroborate her testimony regarding the 1976 agreement under the requirements of Code § 8.01-397, the so-called "dead man's statute."[2]

Margaret's claim for a constructive trust is based on her testimony that, in 1976, Gary told her that if she agreed to the use of joint funds for Gary's initial investment in Liberty, he would consider the proceeds from that investment as joint property held for both of them or the survivor of them. Because the estate is deprived of Gary's testimony on this issue due to his death, no judgment or decree can be entered in favor of Margaret "founded on [her] uncorroborated testimony." Code § 8.01-397. The estate argues that the record is "devoid of any corroborative evidence that is not perfectly consistent with Gary's sole ownership of both the stock and the note . . . ."

---

[2] The estate assigned as error the admission of a number of documents: Exhibits D, H, I, M, R, S, U, V, and X. All exhibits except V and X were minutes of the board of directors' meetings or other descriptions of board actions. We have not considered any of these in our decision, except Exhibit V. That exhibit is discussed in footnote 3, *infra*.

In applying Code § 8.01-397, we have said that each case must be decided upon its own facts and circumstances, that corroboration may be established by circumstantial evidence, and that the corroboration need not independently establish the fact but must itself tend in some degree to support an issue essential to the case which, if unsupported, would be fatal to the case. *Vaughn v. Shank*, 248 Va. 224, 229, 445 S.E.2d 127, 130 (1994). In this case, therefore, Margaret's testimony reciting Gary's statement is admissible only if there is some independent evidence which tends to show that Gary considered or treated proceeds from the Liberty venture as joint funds with a right of survivorship.

Margaret relies on a number of documents to corroborate her testimony. We need not review each of them, however, because sufficient corroboration, in our view, is established by those documents showing the activity of the bank account. These documents reflect Gary's treatment of the venture and its proceeds. Margaret introduced a check dated July 8, 1976, payable to "Liberty Land Ltd." for $350. The notation on the check stub stated "Capital Investment in Partnership Co." Liberty received its certificate of incorporation from the State Corporation Commission on July 9, 1976, the day after the check was written.

The documentary evidence pertaining to the bank account also includes two deposits in 1977 carrying the notation that they represented profits from Liberty. In addition, the record contains a check written on June 2, 1978 from the joint account to Liberty for $10,000 and containing the notation "loan" and "Loan to Corp." Another deposit to the account on December 22, 1978 for $10,561.64 contains the notation "Liberty Land note paid in full $10,000 princ, $561.64 interest earned." Margaret contended that this was a joint bank account with right of survivorship, introducing bank statements for the account which were addressed to both her and her husband. Her attempts to recover the actual bank signature card, Margaret testified, were unsuccessful.

These documents, independent of Margaret's testimony, tend to establish that this account was used by Gary for his initial investment in Liberty, for a loan to the corporation, and for deposit of proceeds from the venture, both profits and loan interest. Furthermore, these deposits were made in an account shown to be a joint account, which, because the depositors on the account were husband and wife, carried the presumption that it was a survivorship account. Former Code § 6.1-73 (Repl. Vol. 1973). Deposit-

ing these proceeds into a joint account with right of survivorship is consistent with considering the proceeds of the venture as joint property with a right of survivorship and inconsistent with treating the proceeds of the venture as separately owned property. Therefore, we conclude that Margaret's testimony was sufficiently corroborated and properly admitted into evidence.

■■■ As recognized by the estate, the admissibility of Margaret's testimony regarding Gary's statement is "the real crux of this appeal." Margaret's entitlement to a constructive trust on the loan proceeds can only arise from the joint agreement evidenced by Gary's statement. When persons agree that the proceeds of a venture are to be joint property and one acquires an interest in the subject matter adverse to the other, "equity will regard him as a constructive trustee and compel him to convey to his associate a proper interest in the property or to account to him for the profits derived therefrom." *Horne v. Holley*, 167 Va. 234, 240, 188 S.E. 169, 172 (1936). *See also H-B Ltd. Partnership v. Wimmer*, 220 Va. 176, 180, 257 S.E.2d 770, 773 (1979). A constructive trust is appropriately imposed to avoid unjust enrichment of a party. *Leonard v. Counts*, 221 Va. 582, 589-90, 272 S.E.2d 190, 195-96 (1980). In this case, the estate would be unjustly enriched in keeping the property if Gary had agreed that the proceeds from Liberty would be joint property with the right of survivorship.

■■■ The foundation of a constructive trust must be established by clear and convincing evidence. *Richardson v. Richardson*, 242 Va. 242, 246, 409 S.E.2d 148, 150 (1991). Margaret's testimony regarding the proceeds of the venture is positive, unequivocal support for her position which, once admitted into evidence, is subject only to the fact-finder's evaluation of credibility and probative effect. Here, the commissioner and the trial court, in ruling in favor of a constructive trust, found Margaret to be a credible witness and accorded her testimony significant probative value. Margaret's testimony, however, was not the only evidence that supported her claim.

In addition to the documents relating to the bank account discussed above, Margaret introduced other documents showing her close involvement in the financial arrangements of the corporation: (1) loan commitment letters bearing her unconditional guarantee of significant loan proceeds; (2) a second deed of trust on property held by her and her husband as tenants by the entireties; and (3)

the hold harmless and indemnity agreement and the payment guarantee executed in conjunction with the purchase of stock from Payne. Margaret notes that it is inconsistent with common experience to incur personal liability of this magnitude for a venture in which one has no interest or expectation of profit.

The evidence also includes a promissory note which she and Gary executed in 1985 for a $140,000 commercial loan which was secured by the promissory note from Liberty. This again, Margaret maintains, shows that Gary considered the note joint property even though he was the sole payee named in the note.

Margaret's documentary evidence is also consistent with her testimony describing prior joint ventures in which she and Gary had participated, consistent with the work she performed in each venture, including the Liberty venture, and, as discussed above, consistent with the instances in which she incurred personal liability for the debts of Liberty.

The only evidence relied on by the estate to counter Margaret's claim is the fact that the stock and note were in Gary's name alone.[3] Margaret testified that holding these items in his name was the result of an "ego problem" stemming from poverty during his childhood. There is no other evidence to contradict Margaret's assertions, such as a specific devise of the note in Gary's will.[4]

The principles of appellate review we apply in reviewing the trial court's decision in this case are well established. The factual findings of the commissioner confirmed by the trial court must be given "great weight." It is not our province to assess the credibility of the witnesses or the probative value to be given to their testimony. *Richardson*, 242 Va. at 246, 409 S.E.2d at 151. Rather, our role is to determine whether the conclusions of the commissioner and trial court are plainly wrong or not supported by the evidence, taking into account the principle that the trial court's decision comes to us with a presumption of correctness. *Surf Realty Corp. v. Standing*, 195 Va. 431, 435, 78 S.E.2d 901, 904 (1953).

Having considered the witnesses' testimony and the documentary evidence, the commissioner unequivocally found that

---

[3] The estate's contention on appeal that Margaret did not establish that the promissory note represented proceeds of the Liberty venture is meritless. Gary Allen Cooper testified that the copy of the promissory note, admitted into evidence as Exhibit V, was the note listed in the estate inventory as "Liberty Land, Ltd. (payment on stock sold)."

[4] The co-executors controlled the note as part of Gary's residual estate.

"[t]he evidence clearly and convincingly shows that the assets used to acquire the debt or the note were assets of both Margaret A. Cooper and the decedent Cooper and derived from the efforts of both over the years to build a successful development business." He further stated that based on the evidence, it would be "unconscionable" not to impose a constructive trust on the note's proceeds. We cannot say, on this record, that the trial court's decision affirming the commissioner's findings and imposing a constructive trust on the proceeds of the promissory note in favor of Margaret was clearly erroneous or not supported by the record. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*