Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Poff, Senior Justice

ARLEAN INEZ BROOKS HILL

                                        OPINION BY
v. Record No. 961095          CHIEF JUSTICE HARRY L. CARRICO
                                      February 28, 1997
ARTHUR BROOKS

              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                 Thomas J. Middleton, Judge Designate


     On May 10, 1994, Arthur Brooks (Brooks) filed in the court

below a bill of complaint against his daughter, Arlean Inez

Brooks Hill (Hill).  In the bill, Brooks sought to have the trial

court set aside a deed of gift dated November 23, 1984, whereby

Brooks conveyed to himself and Hill as joint tenants with the

common law right of survivorship a sixteen-acre tract of land in

Loudoun County (the Property).

     Brooks and his first wife, Inez Harris Brooks, acquired the

Property in 1949 as joint tenants with the right of survivorship.

 Inez died in 1964.  At the time he executed the deed of gift to

himself and Hill, Brooks was seventy-seven years of age.  The day

after he executed the deed, he remarried, and he and his new

wife, Pecolia, resided in a home he owned in Arlington County.

     In addition to Hill, Brooks had four daughters, Iris Anne

Adams, Elaine Brooks Foster, Jewel Blondell Gravette, and Sylvia

Jean Cowans.  He also had a son, Arthur Dalvin Brooks, who died

in 1987, leaving eleven children.

     Brooks alleged in his bill of complaint that at the time the

deed of gift was purportedly executed he was "infirm and of

enfeebled mind [and] ignorant of the meaning of the Deed."  It

was always his intention, he alleged, to share the Property with

all his children, and he thought the deed would protect their interest in the Property should he die or remarry; he did not understand that, under the deed, Hill alone would receive the Property should he die first.  Brooks alleged further that he had no recollection of having executed the deed of gift but that, "if he did in fact sign the . . . instrument," Hill "fraudulently procured his signature."

The evidence was presented to the trial court partly by way of deposition and partly by way of live testimony.  In a letter opinion and a final order, the court stated that it found Hill's testimony "not to be credible."  The court also said the "facts indicate . . . Mr. Brooks believed that he was leaving his property to all of his children [in the deed of gift of November 23, 1984,]" and that "by creating a gift of joint tenancy with [Hill], he was accomplishing his intent."

The court awarded judgment in favor of Brooks and enjoined Hill from selling or mortgaging the Property.  The court also declared that upon Brooks' death, "the property should be held in a constructive trust by Arlean Hill for equal distribution among all the children of Arthur Brooks, per stirpes."  We awarded Hill this appeal.

In addition to several exhibits, the record consists of transcripts of the deposition testimony introduced below and a written statement of facts containing the live testimony introduced.  The record shows that for several years prior to the execution of the deed of gift, Brooks had been represented by Donald L. Bowman, an attorney practicing in Loudoun County.

Bowman gave a deposition below, which was introduced into evidence at trial, and he also testified in person before the trial court "in substantial conformity with his deposition testimony."  A summary of Bowman's testimony follows.

In September 1984, Bowman received from Iris Adams, one of Brooks' daughters, a draft will with a note from Adams stating that the draft described "how [Brooks] wants to distribute his estate."  Bowman prepared a draft will and sent it to Brooks on October 10, 1984, with the request that Brooks call Bowman after he had had "an opportunity to study the will."  The draft would have devised the Property to four of Brooks' five daughters, including Hill, and it would have devised to the fifth daughter, Sylvia Jean Cowans, Brooks' residence in Arlington County.[1]

Some time prior to November 19, 1984, Brooks visited Bowman's office and requested the preparation of a deed of gift "from [Brooks] to himself and Arlean Hill jointly with right of survivorship."  Brooks told Bowman "he was planning on getting married [and] didn't want any of the interest of the wife to attach to the Deed as a result of the marriage."  Brooks turned over to Bowman the deed by which Brooks and his first wife, Inez, had acquired title to the Property in 1949 as joint tenants with right of survivorship.  Brooks told Bowman he wanted the deed of gift to establish a joint tenancy with right of survivorship between himself and Hill in "exactly the way" his earlier deed

_____
[1]The draft will Bowman prepared at the request of Iris Adams was never executed.  Iris testified that after forwarding to Bowman the draft she prepared, she "never pursued the matter further."

had established such a tenancy with Inez.

Bowman prepared the deed the way Brooks requested and mailed it to Brooks on November 19, 1984. On November 23, Brooks returned to Bowman's office, accompanied by Hill. Bowman read the deed to Brooks, and Brooks read the document himself. Bowman explained to Brooks the meaning of "rights of survivorship." Brooks understood the "import of the legal terms" and did not "exhibit any characteristics . . . suggestive of being mentally incapacitated at the time." Brooks executed the deed in Bowman's office and, after it was recorded, Bowman mailed it to Brooks at his Arlington residence.

About a year later, on October 30, 1985, Brooks visited Bowman's office to discuss making a will. Pursuant to this discussion, Bowman prepared a draft will and mailed it to Brooks on November 1. A letter enclosed with the draft will stated that it referred only "to the Arlington property which is actually the only real estate you own in Virginia in your name only."

Accompanied by Hill, Brooks returned to Bowman's office on November 12, 1985. Bowman read the draft will to Brooks and explained its meaning at "quite some length." Bowman pointed out to Brooks that the will "did not contain any references to or provisions regarding the Property." With Hill in attendance, Brooks executed the will in the presence of two witnesses. The will devised to Brooks' wife, Pecolia, a life estate in one third of his Arlington County residence and devised and bequeathed the residue of his estate equally to his son and five daughters.

Brooks also gave a deposition below, which was introduced

into evidence, but he did not testify in person at trial.  In the deposition, Brooks said that Bowman was his lawyer for his business in Loudoun County at the time the deed of gift was executed and that Bowman explained matters to him when he had questions.  He "thought" the signature on the deed was his, but he did not recall that he instructed Bowman to prepare the deed or that Bowman or Hill explained the instrument to him.  He said it had always been his intention that the Property "would be split up among the children," and he understood the deed would "leave" the Property "to all of them."

The "four daughters who were excluded from the Deed [of Gift]," Iris Adams, Elaine Foster, Jewel Gravette, and Sylvia Cowans, testified at trial.  A composite of their testimony is contained in the written statement of facts, as follows.

They had no personal knowledge of the circumstances surrounding the execution of the deed of gift and had not become aware of its existence until almost ten years after its execution.  They, not Brooks, then consulted Brooks' present attorney about their rights and later about Brooks' rights concerning the Property.  Because Brooks had only a third-grade education, he could not have understood the terms of the deed of gift.  Although Brooks presently "suffers from memory loss, is infirm, is under the care of a doctor, and is, at least occasionally, incapacitated," he was "lucid and competent in 1984," the year in which the deed of gift was executed.  Brooks had "another name placed on the Deed so that on his marriage the next day his new wife would not receive the Property on his

death."  "[O]n several occasions . . . in the past," Brooks had "declared an intention . . . to leave the Property to all of his daughters."[2]  Also "on occasion . . . in the past," Hill had stated that "she was holding the Property in trust for her sisters."

Hill gave a deposition which was introduced into evidence, and she also testified in person at trial "in substantial conformity with her deposition testimony."  She stated that from the time her mother passed away in 1964 until approximately 1993, she and her two sons regularly and extensively assisted Brooks with the operation of the Property as a farm and later as a recreational park.  Occasionally, her sister, Sylvia Cowans, "helped out."

Hill denied ever stating that she was holding the Property in trust for the benefit of her sisters, and she denied having been aware, prior to the execution of the deed of gift, of the unexecuted draft will, prepared by Iris Adams, containing provisions inconsistent with the deed.  Hill stated that, prior to the institution of the present proceeding, Brooks "had never expressed a desire that the Property was to be left to all of his children."

Hill stated that Bowman sent to Brooks in her care a signed

_____

[2]The written statement of facts shows that, at trial, Iris Adams offered a copy of the unexecuted will she drafted in 1984 to support the proposition that Brooks "had on several occasions declared an intention in the past to leave the Property to all of his daughters."  However, the written statement of facts also shows that the trial court was "unable to recall testimony that the unexecuted will was prepared pursuant to [Brooks'] request."

copy of the will Brooks executed in 1985 and that, at Brooks' request, she placed the copy in her safe deposit box. Hill also stated that at some time in 1986 Brooks gave her the original of the deed of gift, and that she also placed that instrument in her safe deposit box. She did not give a copy of either document to her father or sisters and the sisters did not learn about the deed of gift until October of 1993, when they secured a copy and confronted Hill with it. They "wanted [her] to sign [the Property] over to . . . all [five] of [the sisters], so it could be sold." Hill responded: "[N]o, that was not my father's wishes that was expressed to me. And as far as I was concerned, it wasn't open for discussion."

On appeal, citing Cooper v. Cooper, 249 Va. 511, 518, 457 S.E.2d 88, 92 (1995), Brooks maintains that the trial court's decision is entitled to a presumption of correctness and that unless the decision is plainly wrong or not supported by evidence, the court's findings must be affirmed on appeal. Furthermore, Brooks argues, it was the province of the trial court to assess the credibility of witnesses and the probative value to be given their testimony, and, exercising its authority, the court found Hill's testimony unworthy of belief and gave full credit to the other testimony of record. Brooks asserts that the court's finding concerning his intent and belief that he was giving the Property to all his children is not plainly wrong and, pursuant to Langman v. Alumni Ass'n of the University of Virginia, 247 Va. 491, 504, 442 S.E.2d 669, 677 (1994), the finding defeats any theory that he had a different intent or

belief.

Brooks submits that since the trial court found that his intent in executing the deed of gift was to "leave" the Property to all his children, the court properly found that the Property should be held by Hill in a constructive trust. Brooks cites Cooper, supra, for the proposition that "[w]hen persons agree that the proceeds of a venture are to be joint property and one acquires an interest in the subject matter adverse to the other, 'equity will regard him as a constructive trustee and compel him to convey to his associate a proper interest in the property or to account to him for the profits derived therefrom.'" 249 Va. at 517, 457 S.E.2d at 91-92 (quoting Horne v. Holley, 167 Va. 234, 240, 188 S.E. 169, 172 (1936)). Brooks also cites Cooper for the proposition that a "constructive trust is appropriately imposed to avoid unjust enrichment of a party." 249 Va. at 517, 457 S.E.2d at 92.[3]

Brooks acknowledges that he had the burden of establishing the grounds for the imposition of a constructive trust by clear and convincing evidence. He says, however, that he carried his burden with his own testimony and the testimony of four of his daughters, including their avowal that Hill "had on occasion stated in the past that she was holding the Property in trust for

---

[3]Brooks says that the present case is "four square" with Cooper because there a constructive trust was imposed on the basis of the finding of a joint venture between the parties and here the trial court "found that the Deed [of Gift] was a joint venture between Brooks and Hill." However, one cannot read the trial court's letter opinion or its final order and find the term "joint venture" mentioned anywhere in either writing.

her sisters."[4]

We disagree with Brooks.  There is a fatal flaw in his argument and, indeed, in the trial court's findings concerning Brooks' intent in executing the deed of gift and his belief with respect to the effect of the deed's provisions.  Both Brooks' argument and the trial court's findings fail to give any weight to the testimony of Brooks' attorney, Donald Bowman, and to the rules applicable when, as here, an issue arises concerning the competency of a party to execute a legal instrument and his ability to understand the instrument's provisions.[5]

In Brown v. Resort Developments, 238 Va. 527, 385 S.E.2d 575 (1989), the guardian of a 72–year-old grantor in a deed sought to have the instrument set aside on the ground the grantor "'because of her advanced age and impaired health was not mentally able to understand the nature of the deed she signed.'"  Id. at 528–29, 385 S.E.2d at 576.  Affirming a decree upholding the validity of the deed, we stated:

> Every person is presumed to be of sound mind, and the burden is upon the party who alleges to the contrary to establish such charge.  The test for determining whether one lacks sufficient capacity to become bound absolutely by deed or contract is whether, at the time the instrument was executed, the grantor possessed sufficient mental capacity to understand the nature of

---

[4]Brooks also stresses the importance of the draft will that Iris Adams sent to Brooks' attorney, Donald Bowman, in September 1984.  But, because no will containing the draft's provisions was ever executed by Brooks and it was not established that the draft was prepared pursuant to his request, it is not entitled to any consideration in the decision of this case.

[5]As noted supra, Brooks alleged in his bill of complaint that at the time he purportedly executed the deed of gift to Hill, he was "infirm and of enfeebled mind [and] ignorant of the meaning of the Deed."

the transaction and to agree to its provisions.  Mental ability varies from one individual to another; therefore, no specific degree of mental  acuteness is to be prescribed as the measure of one's capacity to execute a deed.  And, when mental capacity is in issue, the outcome of every case must depend mainly on the facts surrounding the execution of the deed in question.  <u>Hence, the testimony of witnesses who were present when the instrument was executed is entitled to greater weight than the testimony of those witnesses not present</u>.

<u>Id.</u> at 529, 385 S.E.2d at 576 (emphasis added) (citations omitted).  <u>See also Nelms v. Nelms</u>, 236 Va. 281, 287, 374 S.E.2d 4, 8 (1988) (testimony of those present at deed signing entitled to great weight); <u>Price v. Barham</u>, 147 Va. 478, 481, 137 S.E. 511, 512 (1927) (testimony of those present at execution of documents entitled to peculiar weight).

Here, other than a notary public, only three persons were present when the deed of gift was executed, namely, Bowman, Brooks, and Hill.  Because the trial court found Hill's testimony not credible and she has not assigned error to that finding, we will not consider anything in her testimony favorable to her position.

Brooks' deposition testimony, given ten years after he executed the deed of gift, was anything but clear and convincing.  Rather, it was confused, vague, and contradictory.  Although he "thought" the signature on the deed was his, he denied ever having seen the instrument before and he testified that he had no knowledge of the circumstances surrounding its execution.  At first, he could not recall having executed the 1985 will, but later admitted that it bore his signature and that its provisions were consistent with the deed of gift.  He could name only four

of his daughters, when he had five.  He did not remember whether his only son was alive, when the son had been dead for approximately seven years.  Brooks said his first wife, Inez, had died only a year before, when she had been dead for thirty years.  He said he was not married, that his present wife, Pecolia, was only a "lady friend," when he had been married to Pecolia since November 24, 1984.  And he could not remember that in 1992, he was missing for three days until he was "picked up" by the police after he became lost returning home from a grocery store only six blocks away.

Significantly, Brooks did not testify that he told Bowman it was his intent in executing the deed of gift to "leave" the Property to all his children.  More important, contrary to assertions in Brooks' appellate brief, there is not one word in Brooks' testimony indicating that, if he harbored such an intent, he ever told Hill about it.

In sharp contrast, Bowman's testimony was clear, and it stands undisputed.  Bowman, who had represented Brooks for several years, testified that Brooks came to his office and asked him to prepare a deed of gift from Brooks to himself and Hill jointly with right of survivorship.  Brooks insisted that the deed should establish a joint tenancy with right of survivorship in "exactly the [same] way" as the deed by which Brooks and his first wife had taken title to the Property as joint tenants with right of survivorship in 1949.  Meaningfully, Brooks turned the 1949 deed over to Bowman as evidence of the way he wanted the deed of gift to read.

Bowman mailed the draft deed to Brooks on November 19, 1984, with an enclosed letter asking Brooks to "review [the deed] carefully and let [Bowman] know if there [were] any corrections to be made."  Brooks returned to Bowman's office on November 23, at which time Bowman read the deed to Brooks and explained what "rights of survivorship meant."  Brooks then read the deed himself.  He understood the import of the legal terms and exhibited no characteristics of mental incapacity.

With respect to Brooks' testimony that he intended something other than the creation of a joint tenancy with Hill, testimony that was given years later when he obviously had become forgetful and confused, we paraphrase a passage from Malbon v. Davis, 185 Va. 748, 40 S.E.2d 183 (1946):  "It may be charitably said that [Brooks'] admitted forgetfulness explains his present views and the value to be given to his testimony.  The reasons which moved him to make the deed [of gift to Hill] were apparently satisfactory until [October 1993,] when . . . his other children became disturbed over what he had done."  185 Va. at 755, 40 S.E.2d at 186-87.

We do not overlook the testimony of Brooks' other daughters.  However, they were not present when the deed of gift was executed.  They had no personal knowledge of the circumstances surrounding the deed's execution and did not learn of its existence until some nine years after the fact.  Even they conceded that in 1984, the year the deed was executed, Brooks was lucid and competent. They did opine that, because of his deficient education, Brooks lacked the ability to understand the

deed's provisions.  But that opinion was overcome by the evidence of Brooks' experience in taking title to the Property with his first wife as joint tenants with right of survivorship and, after her death, enjoying sole ownership of the Property for twenty years until he executed the deed of gift.  Furthermore, again paraphrasing something we said in Malbon, supra:  "[Although Brooks was not well-informed] in the sense that he had little education . . . there is nothing to indicate that [when he executed the deed of gift,] he lacked a degree of sagacity which is often possessed by the unlearned."  Id. at 755, 40 S.E.2d at 186.

This brings us to the testimony from Brooks' other daughters that Hill "had on occasion stated in the past that she was holding the Property in trust for her sisters."  Brooks argues that this testimony corroborates his testimony that he understood the deed of gift would "leave" the Property to all his children.  But the statements attributed to Hill stand alone in the record; there is no disclosure of the circumstances under which she made the statements or, more important, what she meant by the remarks.  Standing alone without some elaboration, the testimony concerning Hill's alleged statements can only be described as vague and indefinite.  And Brooks will not be heard to say that he has met the clear and convincing standard required to support the imposition of a constructive trust by using the vague and indefinite testimony of his other daughters to corroborate his own confused, vague, and contradictory testimony.  Hence, the evidence is insufficient to support the trial court's imposition

of a constructive trust on the ground the deed of gift did not carry out Brooks' purported intent to "leave" the Property to all his children.

Brooks argues, however, that the trial court's imposition of a constructive trust should be affirmed on the alternative ground that Hill "committed actual and constructive fraud on Brooks in the execution of the deed [of gift and misrepresented] a material fact." Brooks' argument here is difficult to follow, but, if we fathom it correctly, he says that because Hill knew it was Brooks' intent when he signed the deed of gift to "leave" the Property to all his children, she fraudulently misrepresented to him that the deed would in fact leave the Property to all the children or remained silent and failed to tell her father that the deed would not accomplish his wishes.

The trouble with this argument is that it is based upon a false predicate, viz., that when Brooks signed the deed, Hill knew it was his intent to "leave" the Property to all his children. As indicated supra, there is not one word in Brooks' testimony indicating that if he harbored such an intent, he ever told Hill about it, and nothing else in the record charges her with knowledge of that intent. Brooks falls far short, therefore, of carrying his burden of proving fraud and misrepresentation by clear and convincing evidence. See Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

Brooks also argues that "the unilateral mistake by Brooks in [his] understanding of the deed of gift's [e]ffect . . . makes

the deed voidable."  The rule, however, is that a unilateral mistake may provide a ground for relief only when "'there is mistake on the part of . . . one party,' . . . but it is accompanied by 'misrepresentation and fraud perpetrated by the other.'"  Ward v. Ward, 239 Va. 1, 5, 387 S.E.2d 460, 462 (1990) (quoting Larchmont Properties v. Cooperman, 195 Va. 784, 792, 80 S.E.2d 733, 738 (1954)).  Even if we assume that there was a unilateral mistake on the part of Brooks with respect to his understanding of the deed's effect, the mistake was not accompanied by misrepresentation and fraud perpetrated by Hill, as we have just demonstrated.

Finally, Brooks maintains that because Hill failed to establish consideration for the deed in question, the deed must be declared null and void for failure of consideration.  It should not be necessary to point out, however, that, by definition, a deed of gift requires no consideration.  As this Court said in Carter v. Carter, 223 Va. 505, 291 S.E.2d 218 (1982):

> "Mere failure of consideration or want of consideration will not ordinarily invalidate an executed contract. The owner of the historic estate . . . can give it away, and he can sell it for a peppercorn.  Courts, though they have long arms, cannot relieve one of the consequences of a contract merely because it was unwise."

Id. at 510, 291 S.E.2d at 221 (quoting Planters Nat. Bank v. E. G. Heflin Co., 166 Va. 166, 173, 184 S.E. 216, 219 (1936) (emphasis added)).

The deed of gift is clear and unequivocal on its face in establishing a joint tenancy between Brooks and Hill with right

of survivorship.  Bowman's undisputed testimony clearly established that the deed was drawn "exactly the way" Brooks wanted, that Brooks understood the meaning of legal terms, and that he did not suffer from lack of mental capacity.  By no stretch of the evidence can it be said that Hill fraudulently procured Brooks' signature to the deed of gift.  Under these circumstances, there is no evidentiary basis for the the trial court's judgment in favor of Brooks or its imposition of a constructive trust.  Accordingly, the judgment will be reversed and Brooks' bill of complaint dismissed.

<u>Reversed and dismissed</u>.