COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


TIMOTHY MARTIN BARRETT

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1123-04-1                     JUDGE WALTER S. FELTON, JR.
                                                         APRIL 26, 2005

VALERIE JILL RHUDY BARRETT


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          Edward W. Hanson, Jr., Judge

            Timothy M. Barrett, *pro se*.

            Dorinda Parkola (Legal Aid Society of Eastern Virginia, Inc., on
            brief), for appellee.


        Timothy Martin Barrett (husband) appeals from the final decree of equitable distribution

arising out of his divorce from Valerie Jill Rhudy Barrett (wife).  On appeal, husband contends that

the trial court erred by relying on the testimony of witnesses wife did not identify in the discovery

order; by failing to properly consider the parties' marital debts; and by ordering him to pay $6,000

toward wife's attorney's fees incurred during the parties' prior divorce proceeding.  For the

reasons that follow, we reverse and vacate that part of the trial court's judgment ordering husband to

pay $6,000 of attorney's fees incurred by wife after the separation of the parties, but otherwise

affirm the judgment of the trial court.

                                      BACKGROUND

        On appeal from an equitable distribution award, we view the evidence in the light most

favorable to the party prevailing below, "and grant all reasonable inferences fairly deducible

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). So viewed, the evidence establishes that husband and wife were married on July 28, 1990. During the eleven years of marriage, six children were born to the parties, namely: J.H. born in March 1992; A.E., in August 1993, E.E., in May 1995; E.G., in April 1997; W.A., in February 1999; and K.N. born in February 2001, just five months before the parties separated. On July 21, 2001, as a result of husband's mistreatment and out of concern for her health, wife left the marital residence in Virginia Beach with the six children and moved to Grayson County where her parents resided.[1] She subsequently filed for divorce alleging husband's cruelty as grounds for divorce.

On August 16, 2002, the trial court entered a final decree granting wife a divorce on the amended grounds that the parties had lived separate and apart without interruption for more than a year. Code § 20-91(A)(9)(a). It awarded wife custody of the six children, then ranging in age from sixteen months to nine years, child support, and temporary spousal support. As a result, in part, of husband's aggressive and harassing behavior during the divorce proceedings, wife incurred substantial attorney's fees, of which approximately $29,500 remained unpaid.[2] In its final decree of divorce, the trial court did not award attorney's fees to wife, and did not reserve to her the right to seek attorney's fees at a later date. In the final decree, the trial court released each party's attorney from further representation of their respective clients. Wife's attorney did

_____

[1] During the birth of the parties' last child, wife suffered serious medical complications. However, husband insisted that wife bear more children and that, if she would not, he would consider taking an additional wife.

[2] Wife was represented in the divorce proceedings by an attorney who attended law school with husband, and with whom husband had an ongoing acrimonious relationship. During the period between the entry of the final decree of divorce and the commencement of this proceeding, husband threatened to file a $5 million lawsuit against wife and her lawyer for defamation, suggesting that if wife would agree to his terms for settling the equitable distribution, he would not file the suit.

not object to the decree and did not appeal the fee issue. The decree of divorce deferred any additional determination of spousal support and equitable distribution until a later proceeding.

Husband, a licensed Virginia attorney appearing *pro se*, filed pleadings on September 9, 2002, twenty-four days after entry of the final decree of divorce, requesting that the trial court determine spousal support and equitable distribution of the parties' marital estate. He filed multiple discovery requests, including numerous interrogatories and requests for admission, and gave notice that he would take wife's deposition in Virginia Beach. At the time, wife was unable to afford counsel as she and the six small children were receiving public assistance. Husband was in arrears in payment of both the court-ordered child support and spousal support.[3] Wife subsequently obtained counsel through the Legal Aid Society of Eastern Virginia, Inc., which provides legal aid for indigent persons. On husband's motion, the trial court established July 21, 2001, the date the parties separated, as the valuation date for the marital estate. It referred the matter to a commissioner in chancery "to take testimony and report his findings to the Court . . . on the issues of spousal support and equitable distribution."[4]

On May 12, 2003 and June 3, 2003, the commissioner received evidence pursuant to the decree of reference. During the proceedings, at which both parties were present and testified, husband continued to act *pro se*, examining witnesses, and presenting evidence in his own behalf. The commissioner heard testimony from Scott Etherton, a lawyer who had known

---

[3] On August 14, 2002, husband was found guilty of contempt for failing to pay spousal and child support awarded by the court *pendente lite*. At the time of the entry of the final decree of divorce, the court found husband to be in arrears of child and spousal support in the amount of $4,204. On March 24, 2003, husband was found in contempt for failing to pay child support, with arrearages exceeding $7,500.

[4] Because the parties chose not to present evidence on the issue of spousal support, the commissioner recommended, "that the spousal support remain as set forth in the final divorce decree." On December 6, 2002, all matters pertaining to spousal support were transferred to the Grayson County Juvenile and Domestic Relations District Court.

husband and wife during their marriage, regarding the parties' marriage at the time of their separation and the success of husband's law practice. He also heard testimony from Hayden Dubay, husband's former employer at the Injury Law Center of H.I. Dubay, P.C. Dubay testified that he terminated husband's employment with the firm for misconduct, namely, for having an inappropriate relationship with one of the firm's female employees, and for viewing pornography on his computer at work. Dubay stated that when husband was fired, he took with him numerous case files on which he had been the responsible attorney. Dubay, with twenty-three years' experience as a personal injury lawyer, also testified as an expert, estimating the likely fees to be gained from the case files husband took from his firm ranged between $80,000 and $160,000. Husband did not contest Dubay's qualifications as an expert to value the case files in issue or husband's law practice. He did object, however, to Dubay's being allowed to testify in any manner, arguing that wife had violated discovery rules, i.e., that she had not identified Dubay as an expert to be called in response to his specific discovery request. The commissioner permitted Dubay's testimony, finding that it would aid him in making recommendations to the trial court as to the value of the marital estate.

During the two hearings, the commissioner received multiple exhibits from the parties relating to their claims of marital debts and assets. From the evidence, the commissioner found that, during the eleven-year marriage, wife was the primary caregiver for the parties' infant children and that she made substantial non-monetary contributions to the well-being of the family. He found that wife had received an undergraduate degree in education, had taken graduate level courses in education, but had never worked as a teacher and had never acquired a teaching certificate. He also found that wife assisted husband in establishing his practice, working as his secretary and meeting with clients in their home. He found that during the marriage, husband attended law school, during which time he also worked part-time as an

investigator for the Dubay firm. After graduation, husband was employed for three years as an attorney in the Dubay firm until he was fired for misconduct. Thereafter, husband established a separate personal injury law practice, operating as The Injury Institute of Virginia, P.L.C. Among the exhibits received by the commissioner was a detailed listing, compiled by husband, of the parties' debts and assets and their respective values as of July 21, 2001, the agreed valuation date.

The commissioner filed his report, including the exhibits and transcripts of the testimony, with the trial court on July 11, 2003. Based on evidence he obtained from the parties, and considering the factors set out in Code § 20-107.3(E), "especially, husband's negative non-monetary contributions," the commissioner recommended that husband be apportioned all of the marital debt without monetary contribution from wife, that the tangible personal property in possession of each party be retained as the separate property of the party possessing it, and that no monetary adjustments be awarded for any difference in value. He also recommended that husband contribute $10,000 toward wife's attorney's fees incurred during the earlier divorce proceedings. Wife claimed those fees to be marital debt.

On February 11, 2004 and April 5, 2004, the trial court heard argument on husband's exceptions to the commissioner's report. On May 4, 2004, the trial court affirmed, ratified, and incorporated the commissioner's report in its final decree without modification, but reduced from $10,000 to $6,000 the amount that husband was ordered to pay directly to wife's attorney for fees wife incurred during the divorce proceedings. This appeal followed.

ANALYSIS

For the reasons that follow, we affirm the final decree of equitable distribution, with the exception of that part of the decree ordering husband to "contribute $6,000.00 toward the

- 5 -

accumulated attorneys [sic] fees owed by the [wife], made payable to [wife's] former attorney . . . no later than one year from the date of the entry of the Decree . . . ."

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Where a trial court refers matters in an equitable distribution proceeding to a commissioner in chancery to receive and consider the evidence, and to make a report to the trial court with his recommendations based on his findings, we give "great weight" to the factual findings of the commissioner approved by the trial court. Cooper v. Cooper, 249 Va. 511, 518, 457 S.E.2d 88, 92 (1995). We will not reverse such findings on appeal unless they are plainly wrong, without credible evidence in the record to support them. Barker v. Barker, 27 Va. App. 519, 531, 500 S.E.2d 240, 246 (1998); Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988).

### Admissibility of Dubay's and Etherton's Testimony

Husband contends that the trial court erred in considering the testimony of Hayden Dubay and of Scott Etherton. He contends that testimony should be excluded because wife failed to provide the names of witnesses she intended to call at the commissioner's hearing pursuant to the rules of discovery. Specifically, he argues that because she responded that she had "no plans to call any witnesses"[5] to his discovery request for the names of her possible

---

[5] Question 15 of husband's February 2004 Interrogatories asked wife to:

> State the name, address, profession, educational and employment background of any expert you will or may call to testify in this case as to any manner presently or hereafter at issue in these proceedings, and set forth the subject matter on which the expert is expected to testify, the substance of facts and opinions to which he is expected to testify, and a summary of the grounds of each opinion.

expert witnesses, the commissioner and the trial court should have excluded the testimony of Etherton and Dubay as an appropriate sanction for her failure to comply with discovery pursuant to Rule 4:12(b)(2)(B).

The exclusion of testimony as an appropriate sanction for abuse of discovery is within the sound discretion of the trial court. Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000); Virginia Elec. & Power Co. v. Dungee, 258 Va. 235, 258, 520 S.E.2d 164, 177 (1999). Assuming, without deciding, that wife improperly failed to supplement her earlier discovery response concerning calling of witnesses, the trial court, nevertheless, had broad discretion under Rule 4:12 in determining an appropriate sanction for that failure.

> "Rule 4:12 gives the trial court broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." And a trial court's decision to admit evidence that is not timely disclosed, rather than impose the sanction of excluding it, will not be reversed unless the court's action amounts to an abuse of discretion.

Rappold v. Indiana Lumbermens Mut. Ins. Co., 246 Va. 10, 14-15, 431 S.E.2d 302, 305 (1993) (quoting Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990)).

Here, the record establishes the commissioner, after hearing husband's arguments to exclude Dubay's and Etherton's testimony, concluded that the testimony of each was relevant to his inquiry directed by the decree of reference and that husband would not be prejudiced by taking their testimony. The record reflects that husband was fully familiar with Dubay, his competency to value husband's legal practice, and the likelihood that he would be called as a witness. Prior to the commissioner's hearing, husband had filed a motion to quash wife's

---

Wife responded:

> I presently have no plans to call any witnesses. Not applicable. I reserve the right to call witnesses in the future if I obtain counsel and if my counsel so advises.

subpoena *duces tecum* of Dubay's records related to the case files husband took with him when Dubay fired him for misconduct. Husband and Dubay had previously engaged in a financial dispute over compensation that husband claimed Dubay owed to him, and over the value of the cases husband took with him. The commissioner determined that Dubay's testimony was necessary to aid him in the valuation of the marital estate.[6] Moreover, husband did not object to Dubay's qualifications as an expert either as to valuation of the case files husband took with him, or in the valuation of husband's law practice. We conclude that the trial court did not err in failing to exclude the testimony of Dubay.

Husband also argues that the trial court erred in relying on Dubay's expert opinion on valuation because he did not establish that it was "held by him to within a reasonable degree of probability or certainty." See Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980) (requiring expert opinions to be "brought out of the realm of speculation and into the realm of reasonable probability"). We will not substitute form over substance by requiring an expert to use the magic words "to a reasonable degree of certainty," when the opinion expressed by the expert is in the realm of reasonable probability. See Island Creek Coal v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988).

Reasonable degree of certainty requires only that Dubay's valuation of the files and husband's law practice "is at least *more probable than not*." Piedmont Mfg. Co. v. East, 17 Va. App. 499, 506, 438 S.E.2d 769, 774 (1993) (citation omitted) (emphasis in original). Valuation of property must be based on more than speculation or "mere guesswork." Bosserman

---

[6] Code § 8.01-401.3(A) provides that:

> In a civil proceeding, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989).  Expert opinion is not speculative if it is "based upon facts within [the expert's] knowledge or established by other evidence." Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990).  Where there is conflicting evidence given as to value, as occurred here, the trier of fact may choose that evidence which it finds more credible and probable.  See Reid v. Reid, 7 Va. App. 553, 563, 375 S.E.2d 533, 539 (1989) (commissioner may find one of several conflicting expert appraisals more credible so long as credible evidence supports selected appraisal).

Here, the commissioner and the trial court determined that Dubay's opinion as to the value of the case files in issue and of husband's legal practice was based on an accurate understanding of the relevant facts, was not speculative, and was more probable than not.  The record reflects that Dubay based his expert opinion on his twenty-three years of experience as a personal injury attorney, his experience in evaluating personal injury cases, and on his specific knowledge of the cases husband took from his firm.  In rebuttal to Dubay's valuation testimony, appellant testified that his law practice had a negative value on the valuation date.  The trial court was not required to reject Dubay's valuation merely because husband believed his "evidence might be more accurate, convincing, desirable, or persuasive."  Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987); see also Zipf v. Zipf, 8 Va. App. 387, 395, 382 S.E.2d 263, 268 (1989).  From the record in this case, we conclude that Dubay's testimony met the required standard for expert testimony for valuation of husband's law practice and of the case files in question.

Finally, we find that the trial court did not err in affirming the commissioner's decision to permit Etherton to testify and in considering that testimony in arriving at its equitable distribution award.  Wife did not call Etherton as an expert and was under no obligation to list

him in her response to husband's interrogatory requesting only the names of experts she intended to call. The trial court did not abuse its discretion by refusing to strike his testimony.

We conclude that the commissioner did not abuse his discretion in receiving, and that the trial court did not err in considering, the testimony of Dubay and Etherton, either as to the valuation of husband's law practice and the case files in issue, or as to matters relating to the parties' marriage.

Equitable Distribution of Marital Debt

In his opening brief and at oral argument, husband asserted, "that the marital debts are the crux of this case" and that "the value of the marital assets was insignificant relative to the enormous amount of the marital debts."[7] He contends that the trial court failed to determine the parties' specific marital debts and assets, and to thereafter equitably apportion them after considering all the factors of Code § 20-107.3(E). Nothing in the record before us supports husband's claim that the trial court failed to consider the matters contained in the commissioner's report, or the factors in Code § 20-107.3(E) in fashioning the equitable distribution award.

> The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors. This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.

Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

The commissioner's report included the exhibits filed by the parties detailing their claims, as well as the transcripts of the proceedings before him, including the testimony of the various witnesses. The trial court affirmed, ratified, and incorporated the commissioner's report in its final

---

[7] At the commissioner's hearing, husband presented an exhibit listing the marital debt of the parties to be in excess of $325,000. In argument to the trial court, he stated the parties' total debt to be $215,451.84.

decree of equitable distribution, considered and overruled each of husband's exceptions to the report, and reduced the amount that husband was ordered to pay to wife's former attorney from $10,000 to $6,000.

In determining its equitable distribution award, the trial court must consider the "debts and liabilities of each spouse [and] the basis for such debts and liabilities." Code § 20-107.3(E)(7). Once it has determined the debts and liabilities of the parties, it has "authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C).

Here, the record reflects that the apportionment of the parties' marital debt was largely determined on "the basis for such debts and liabilities," including the costs of husband's law school education and establishment of his law practice after he was fired from his previous employment for misconduct, and on husband's negative and wife's positive "nonmonetary" contributions to the well-being of the family. Code § 20-107.3(E)(7), (1). Moreover, under the equitable distribution award, husband retained his interest in his law firm, the only substantial marital asset, and retained the marital residence, which was titled solely in his name.

From our review of the record, we cannot say the trial court's judgment as to the apportionment of marital debt to the husband, except as noted below, is plainly wrong or without credible evidence to support it. See Taylor, 5 Va. App. at 444, 364 S.E.2d at 249.

Attorney's Fees

Husband contends that the trial court erred "by awarding attorney's fees from another case," referring to attorney's fees wife incurred during the ended divorce proceedings. Generally, an award of attorney's fees to a party in a divorce proceeding is a matter within the

sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).

Wife's counsel in the divorce proceedings filed an amended bill of complaint, requesting an award of "attorney's fees and court cost expended in this [divorce] suit." However, the final decree of divorce did not award attorney's fees to wife, nor did it reserve to wife the right to seek attorney's fees in the deferred proceedings for equitable distribution and spousal support. Moreover, wife's counsel did not file any exceptions to the final decree of divorce asserting error on the part of the trial court for failure to award attorney's fees to wife or to reserve to her the right to seek those fees at a later proceeding. That divorce decree, having become final twenty-one days after its entry, could not thereafter be modified to award attorney's fees to wife. Rule 1:1. Nevertheless, the commissioner recommended in his report that the trial court require husband to contribute $10,000 toward the accumulated attorney's fees incurred by wife in the divorce proceedings,[8] implicitly categorizing the wife's attorney's fees as marital debt. The trial court agreed, but it subsequently reduced the amount of the award to $6,000.

Husband contends that the trial court erred in adopting the commissioner's classification of wife's attorney's fees as marital debt, and in ordering him to pay $6,000 of that debt. He asserts that wife incurred these fees after the parties separated on July 21, 2001, which is also the date the court set for valuation of the parties' marital estate. He argues that pursuant to Code § 20-107.3(A)(2), attorney's fees incurred by wife after the parties separated cannot be classified as marital debt. We agree.

"All property . . . of whatever nature, acquired by either spouse during the marriage, *and before the last separation of the parties*, if as such time or thereafter at least one of the parties

---

[8] At the commissioner's hearing, wife presented a bill from the attorney who earlier represented her in the divorce proceedings showing a balance of $29,500 owed. That bill was included in the exhibits made part of the commissioner's report.

- 12 -

intends that the separation be permanent, is presumed to be marital property . . . ." Code § 20-107.3(A)(2) (emphasis added). Here, it is clear from the record that the wife's attorney's fees were incurred after the parties separated and, therefore, not properly included in the marital estate as marital debt. The trial court has "authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C). However, it is without statutory authority to classify any debt incurred by either party after their separation, as marital debt.

This Court has previously held that unpaid attorney's fees may constitute debt when incurred in anticipation of divorce or separation, and it is not error for the trial court to consider that separate debt when fashioning its equitable distribution award. Booth v. Booth, 7 Va. App. 22, 29, 371 S.E.2d 569, 573 (1988). However, in classifying property as marital or separate, the trial court must consider "when property is acquired, and, similarly, when debt is incurred . . . ." Stumbo v. Stumbo, 20 Va. App. 685, 692, 460 S.E.2d 591, 595 (1995). Unlike in Booth, wife here incurred attorney's fees after the separation of the parties and after the agreed valuation date set by the trial court.

We conclude the trial court erred in classifying wife's attorney's fees, incurred in the divorce proceedings and after the parties separated, as marital debt. The record reflects that the parties separated on July 21, 2001 and did not thereafter live together as husband and wife. All property, including debt of either party, acquired after July 21, 2001, is presumed to be separate property. Code § 20-107.3(A)(2); Stumbo, 20 Va. App. at 692-93, 460 S.E.2d at 595. Wife conceded that she only incurred the fees to her divorce attorney after the parties separated on July 21, 2001.

If the trial court intended to make a monetary award, it did not say so, and even if did so intend, it would be error to order husband to pay it directly to a third party. In Woolley, this Court made clear that Code § 20-107.3 does not authorize a trial court to make equitable distribution of marital property to a non-party. 3 Va. App. at 341 n.1, 349 S.E.2d at 425 n.1. We conclude that the trial court erred in classifying wife's attorney's fees as marital debt, having incurred them after the July 21, 2001 separation date, and in ordering husband to pay $6,000 of that debt directly to wife's former attorney.

## CONCLUSION

We find that the trial court did not abuse its discretion in receiving and considering the testimony of Hayden Dubay and Scott Etherton, or in its equitable distribution of the parties' assets and apportioning the parties' marital debt, except as to its classification of wife's attorney's fees as marital debt. We hold that the trial court erred in classifying wife's attorney's fees, incurred after July 21, 2001, as marital debt and in apportioning $6,000 of that debt to husband for payment. Accordingly, we vacate and dismiss that portion of the final decree of equitable distribution ordering husband to "contribute $6000.00 toward the accumulated attorneys [sic] fees owed by [wife], made payable to [wife's] former attorney . . . no later than one year from the date of the entry of the Decree of Equitable Distribution" but otherwise affirm the judgment of the trial court.

Affirmed, in part, and<br>reversed, in part.